FLICK–REEDY CORPORATION, a corporation, Plaintiff,

v.

HYDRO–LINE MANUFACTURING COMPANY, a corporation, Defendant.

No. 59 C 25.

United States District Court
N. D. Illinois, W. D.

May 14, 1964.

Hofgren, Wegner, Allen Stellman & McCord, Chicago, Ill., for plaintiff.

Welsh & Bradway, Chicago, Ill., for defendant.

PERRY, District Judge.

This cause heretofore having come on for trial upon the pleadings and proceedings had herein, the court has considered the evidence and has examined the exhibits introduced as well as the briefs submitted by counsel. The court observes that counsel in this case are to be complimented for the outstandingly fine manner in which they presented their cases and for the excellent briefs which they submitted.

The court finds the facts and states the conclusions of law as follows:

### FINDINGS OF FACT
#### The Parties and Jurisdiction

1. Plaintiff, Flick-Reedy Corporation, is an Illinois corporation located in Bensenville, Illinois, and engaged in the business of manufacturing and selling hydraulic and pneumatic cylinders and related products. Cylinders of this type are used as motors and include a reciprocating piston within a fluid-tight cylinder. The piston and piston rod connected thereto are moved to and fro by fluid pressure admitted to the cylinder. Plaintiff was incorporated in 1952, and was successor in business to Miller Motor Company, which was a partnership formed in 1945. Plaintiff is the owner of copyright registration certificate A–338557 for a copyright on plaintiff's Bulletin JH–104N entitled "Hydraulic Cylinders". Plaintiff also is the owner of U. S. Letters Patent No. 2,798,777 of Flick and Kudlaty for a lug mount for cylinders, and Patent No. 2,842,284 of Flick for a particular cylinder head and tube seal arrangement for cylinders.

2. Defendant, Hydro-Line Manufacturing Company, is an Illinois corporation located in Rockford, Illinois, and has been engaged in the business of manufacturing and selling hydraulic and pneumatic cylinders since 1946.

3. This Court has jurisdiction of the parties and the subject matter of the complaint and counterclaim. No issue is presented as to venue.

#### The Issues

4. In the complaint, plaintiff charged defendant with infringement of patent No. 2,842,284, referred to hereafter as

the "seal" patent, by selling and offering for sale hydraulic cylinders designated Series R–2. By stipulation at the trial, plaintiff also charged infringement by other models S–2, T–2 and N–2 of defendant, and restricted the charge to claims 1, 2 and 5. Defendant denies infringement and asserts that the patent is invalid and unenforceable.

5. Plaintiff also charges infringement of Flick and Kudlaty patent No. 2,798,777, hereafter referred to as the "lug mount" patent, by defendant's manufacture and sale of its now obsolete models NE and RE and its current models $R_2E$ and $N_2E$. At the trial, the charge was restricted to claims 1, 2 and 4 with respect to the NE and RE mounts and restricted to claims 2 and 4 with respect to defendant's current bar type of mount, models $R_2E$ and $N_2E$. Defendant asserts that the lug mount patent is invalid and is unenforceable. Defendant denies infringement of any claims of the patent by its current $R_2E$ and $N_2E$ models. With respect to the obsolete models RE and NE, defendant has admitted infringement if the patent should be held valid.

6. The complaint also charges defendant with infringement of copyright registration A–338,557 by the publication of defendant's bulletin SR2–57B. Plaintiff asserts that pages 9 and 10 of defendant's bulletin are copies of pages 20 and 22 of plaintiff's bulletin JH–104N. Defendant denies infringement because of its independent writing and denies that plaintiff has any exclusive rights to assert against defendant.

### THE SEAL PATENT AND DEFENDANT'S CYLINDERS R2, S2, T2 AND N2

7. Flick patent No. 2,842,284 is directed primarily to the connection between the head and the barrel or tube of the cylinder shown in Figure 4 of this patent (Tr. 357,358, PX 4, DX 201, Col. 2). As is seen in Figure 4, an outer cylindrical surface 32 on the cylinder tube or barrel pilots on the outer wall 30 of a groove in the head (sometimes referred to as an O. D. pilot) and the end of the

barrel presses against a resilient seal ring in the groove. A shoulder on the barrel limits the squeeze on the ring. The patent specification stresses the fluid-tight engagement of the pilot surfaces (DX 201, Col. 2, 11. 45–47). The patent specification also stresses absolute concentricity of the tube and head through use of a special tool (DX 201, Col. 3, 11. 2–5 and 19–22). The patent specification also points out that the shoulder is in abutting, surface to surface contact with the head (Col. 2, 11. 22–28). Many types of resilient seal rings can be used in this connection including Teflon rings, Vellumoid gaskets, O-rings and washers similar to hose washers (Tr. 94, 113, 344, 368, 369).

8. In all pressure cylinders, regardless of type, the pressure within the cylinder tends to expand the cylinder barrel or tube outwardly and tends to produce separation of the cylinder tube and heads (Flick Tr. 1564, Ellis Tr. 925, 965).

9. Pressure cylinders have sometimes used tie-rods between the heads at the ends of the cylinders to hold the barrel clamped therebetween and at other times have used tie-bolts which are connected between the head and barrel at each end of the cylinder (Tr. 751, 774, 865).

10. Since in or about 1957, plaintiff has manufactured and sold cylinders wherein the cylinder tube piloted on the outer wall of a groove in the head, with a seal ring in the groove at the end of the barrel, and with a shoulder limiting the squeeze on the ring by its abutting contact with the head (Tr. 38, 67). Between 1957 and 1960, plaintiff used a tapered fit with zero clearance between the pilot surfaces of the head and barrel (Tr. 75, 131, 132, 1224, 1225). From 1960 until the time of trial, the manufacturing tolerances of plaintiff's cylinders were changed to permit a clearance between the pilot surfaces of the head and barrel, even though a tapered fit was still used (Tr. 353). The cylinders made by plaintiff between 1957 and 1960 were essentially leak-proof with respect to leakage of fluid within the cylinder, even without the seal ring, due to the zero

clearance and metal to metal contact at the pilot surfaces (Tr. 74, 75). The cylinders made by plaintiff between 1960 and the time of trial would not be leak-proof without the seal ring because of the increase in clearance (Flick Tr. 1223–1227).

11. Each of defendant's R2, S2, T2 and N2 cylinders has an outer wall of the cylinder tube piloting on the outer wall of a groove in the cylinder heads (DX 71, 72, Tr. 1067–1070). Defendant's R2 cylinders have a shoulder on the barrel which abuts against the head and limits the squeeze on a seal ring between the end of the barrel (or tube) and the bottom of the groove in the head (Tr. 1068, 1069). Defendant's S2, T2 and N2 cylinders position the ring within a recess on the outer wall of the barrel. The compression on the seal ring in the S2, T2, and N2 cylinders is limited by abutment of the end of the cylinder barrel with the bottom of the groove in the head. None of defendant's cylinders uses a tapered fit between the pilot surfaces (Tr. 419–421, 1091, 1092). All of defendant's cylinders have a clearance between the pilot surfaces of the cylinder barrel and head (Tr. 1090, 1273, 1274). With such clearance, defendant's cylinders lack both "absolute concentricity" and fluid-tight "sealing relation" contemplated by patent No. 2,842,284. Defendant's specifications call for this clearance to be from .002 to .006 inches (Tr. 1080). One defendant's R2 cylinders produced at trial by plaintiff showed a clearance between these pilot surfaces of .001 to .0015 inches (Tr. 148). Defendant uses an ordinary machine finish on its pilot surfaces (Tr. 1284). The finish on the pilot surfaces of defendant's cylinders is rougher than the finish on the pilot surfaces in plaintiff's cylinders (PX 71, 72, 73, Flick Tr. 1236, 1239, J. Harding 1085, 1086, Bosi 1274, 1284). Defendant's cylinders depend upon the seal ring to prevent fluid leakage (Tr. 1374). When defendant's cylinders are assembled without the seal ring, they will allow fluid leakage at fluid pressures up to at least 2700 p. s. i. (pounds per square inch). This is shown by defendant's tests of its cylinders (Tr. 1277–1283, 1354–1359). Plaintiff offered no evidence of tests of defendant's cylinders as to such leakage or as to results obtained with defendant's cylinders. Defendant commenced manufacture of the accused cylinders in 1957 (DX 74, 75, 76, Tr. 1074–1076).

12. Plaintiff's commercial cylinders above referred to are rated for operating pressures of 500 to 2500 p. s. i. for the model J and 3000 to 5000 p. s. i. for model H (PX 12). Defendant's cylinders above referred to are rated for operating pressures of 200 p. s. i. for air and 1000 p. s. i. hydraulic in the S2, T2 Series (DX 71), 200 p. s. i. air and 500–2500 p. s. i. hydraulic in the R2 series and 2700–5000 p. s. i. hydraulic in the N2 series (DX 72). Both plaintiff's commercial J and H cylinders and defendant's commercial R2, S2, T2 and N2 cylinders use tie-rods extending between the heads of the cylinder to clamp the cylinder tube or barrel therebetween (PX 12, DX 71, 72). The cylinders are suitable for use with either air or hydraulic fluid as the operating medium (PX 12, DX 71, 72).

13. Prior to commercial manufacture of its model J cylinders, plaintiff had manufactured hydraulic cylinders in which the inner surface of the cylinder tube was piloted on an inner wall of a groove of the cylinder head (sometimes referred to as an I. D. pilot) and with an O-ring positioned in a recess in the inner wall of the groove and engaging the inner wall of the tube (PX 2, Tr. 36, 37). These cylinders used tie-rods extending between the heads of the cylinder so as to clamp the cylinder tube therebetween (Tr. 36). Plaintiff was manufacturing and selling these cylinders prior to the model J cylinders. Plaintiff asserts that the seals of the earlier cylinders were inadequate due to extrusion of the seal ring when the pressure within the barrel caused expansion of the barrel (Tr. 63). The pilot surfaces separated when the barrel expanded and the seal ring could be extruded through the space between them. Plaintiff asserts that because of this problem, it adopted the head and

barrel construction of its model J cylinders above referred to. These prior cylinders of plaintiff were rated for operating pressure up to 2000 pounds per square inch (PX 2).

14. At least as early as 1947, plaintiff was manufacturing and offering for sale air cylinders in which a Vellumoid gasket was used as a sealing medium at the end of the cylinder barrel in a groove in the cylinder head. Tie-rods were used to clamp the cylinder barrel between the heads of the cylinder. These cylinders had no shoulder for limiting the squeeze on the seal ring (PX 1, Tr. 34–36).

15. At the time of filing the application for patent 2,842,284, tools for finishing the barrel surfaces and the cooperating pilot surfaces of the barrel and head so as to produce absolute concentricity and zero clearance were not known to the trade, (Flick Tr. 377). Plaintiff uses a tracer tool to finish its cylinders in this way and has maintained its use of this tool as a trade secret (Tr. 374–376). Absolute concentricity is not obtained if there is clearance between the pilot surfaces (Flick Tr. 396). A "sealing engagement" of the pilot surfaces also depends upon the smoothness of finish of these surfaces. Small scratches can allow fluid leakage between these surfaces (Tr. 76).

16. Claims 1, 2 and 5 of patent 2,842,-284 call for a cylinder construction in which the cylinder tube is received within a groove in the head, with a resilient sealing ring in the groove at the end of the tube, with the outer wall of the tube having a surface which pilots on an outer wall surface of the groove and with the two piloting surfaces "engaging in sealing relation" (Tr. 1349–1353, 1362–1364, 1369–1372). Claims 1, 2 and 5 also call for the piloting surface of the barrel to be on the reduced thickness section at the end of the barrel. In addition, claim 5 requires a shoulder on the tube for limiting the squeeze on the sealing ring (Tr. 177, 1426). The shoulder referred to is omitted in claims 1 and 2 (Tr. 1426). Claim 1 requires some tie-rods for connecting one head with one end of the barrel (Tr. 1423, 1424). Claim 2 differs from claim 1 in calling for a head at each end of the barrel and some form of tie-rods for holding the heads and tube together (Tr. 1424, 1425). Claim 5 calls for any type of tie means for connecting the heads and cylinder tube in assembled relation. None of the defendant's R2, S2, T2 and N2 cylinders have pilot surfaces engaged in sealing relation as is called for in claims 1, 2 and 5 of plaintiff's patent 2,842,284 (Tr. 1353, 1354, 1362, 1364, 1365, 1369, 1370, 1372, 1373).

17. The "sealing" engagement of the piloting surfaces as set forth in claims 1, 2 and 5 of plaintiff's patent 2,842,284 is a critical element in the claims of this patent. The limitation as to such "sealing engagement" appears in all of the claims of the patent and was put into all of the claims by amendment before the Patent Examiner allowed the application (Tr. 1372, DX 201F). The term "sealing" as used in these claims means sealing against fluid leakage, and was used consistently in this sense by plaintiff in the specification of this patent (Col. 2, 11. 41–49, Col. 4, 11. 9–12) and in arguments presented to the Patent Office (DX 201F, p. 24). If the pilot surfaces are in "sealing relation" against fluid leakage, they also will prevent extrusion of the seal ring. If they are not sealed against fluid leakage, they will prevent extrusion only when the clearance or "crack" between the surfaces is small enough to prevent it, (Tr. 1379, 1382). The patent states that any such crack or space is avoided (Col. 4, 11. 8–17) and that the metal to metal contact of the pilot surfaces seals against fluid leakage.

18. None of defendant's R2, S2, T2, N2 cylinders respond to the terms of or infringe claims 1, 2 and 5 of plaintiff's patent 2,842,284 because they omit use of pilot surfaces engaged in "sealing relation", a feature critical to plaintiff's patent. None of defendant's S2, T2 and N2 cylinders infringe claim 5 of plaintiff's patent for the additional reason that

they do not have the shoulder recited in claim 5 of this patent, (Tr. 1353–1355, 1360–1373).

19. The prior art developed by the Patent Examiner in his examination of the application for patent 2,842,284 included a patent to Becker 2,673,130 which had pilot surfaces formed on the inner wall of the cylinder tube and the inner wall of a groove in the head with a sealing ring in a recess on the inner wall of the groove. This patent was similar to plaintiff's hydraulic cylinder constructions prior to 1957 (PX 2) insofar as the cylinder tube and head and seal ring structure was concerned. The prior art considered by the Patent Examiner also included a patent to Keeler 1,200,118 on a hose coupling, U. S. patents Nos. 1,429,-303 and 2,611,506 and British patent No. 207,855 of 1923 (DX 201, DX 201F). None of the prior art cited by the Examiner included a showing of a power cylinder in which the end of the cylinder tube comes up against a resilient seal ring in the bottom of a groove and squeezes it down to the head (Fischer Tr. 1436, 1437). Lacking this teaching, the prior art cited by the Examiner necessarily fails to disclose a cylinder in which a shoulder on the cylinder tube limits the compression of a resilient seal ring positioned in the groove in the head and at the end of the cylinder tube. In its arguments to the Patent Office, plaintiff stressed that the Becker patent was representative of knowledge of cylinder head and tube constructions before the application was filed (DX 201F, p. 22).

20. Plaintiff's own 1947 air cylinder construction (PX 1) was not called to the attention of the Examiner and apparently was not considered by the Examiner in his examination of plaintiff's patent No. 2,842,284. The structure of plaintiff's patent (as depicted in Figure 4 of the patent) differs from what is shown in this 1947 publication of plaintiff (PX 1) by reason of having a shoulder on the cylinder tube which limits the compression of the seal ring (Flick Tr. 1254). This publication of plaintiff illustrates a cylinder in which the cylinder barrel pilots on the outer wall of a groove, with the end of the barrel pressing against a seal ring at the end of the groove. Pressure within the cylinder of this publication, tends to force the outer wall of the barrel outwardly into contact with the outer wall of the groove (Flick Tr. 337, 411).

21. The Patent Office, in its examination of plaintiff's patent No. 2,842,284, also did not cite and apparently did not consider certain HP cylinders which were manufactured and sold by Hanna Engineering Works between 1950 and 1960. These cylinders have a reduced end portion of the barrel received within a groove in the cylinder heads, a resilient sealing ring which is at the end of the barrel, with the outer surface of the barrel reduced portion piloting on the outer surface of the groove and with a shoulder on the barrel abutting the head of the cylinder and limiting the squeeze on the seal ring (Tr. 731–735, 1420–1428). The clearances between the piloting surfaces in these cylinders ranged from .001 to .005 depending upon the size of the cylinders (Tr. 740, 849, 850). Pressure within the cylinders tended to expand the barrels outwardly and cause engagement of the piloting surfaces (Tr. 739, 744, 842, 852). In some instances, these piloting surfaces could provide a sealing relation between one another (Tr. 855–861). In all of these HP cylinders, the arrangement was such as to prevent extrusion of the sealing ring; and Hanna experienced no problems in connection with extrusion of the sealing ring (Tr. 742, 881). The nature of the Hanna HP cylinders and their manufacture and sale is shown by testimony of several witnesses who were personally familiar with the cylinders and their manufacture and sale (Kuhnke Tr. 612, 620, Ellis Tr. 833, 845, Hallerstrom Tr. 990). It is also shown by a number of drawings and documents (DX 19, 24–35, 57–61, Kuhnke Tr. 653, Ellis Tr. 827) and a cylinder produced at trial and which had been sold to Stetson China Company in 1950 (DX 36, Tr. 1004).

22. The patent application file of plaintiff's patent No. 2,842,284 also fails to disclose any consideration of a Hanna HP cylinder which was illustrated in Hanna catalog No. 233A (DX 48, DX 48A, DX 54) which was published and copyrighted in 1950 (DX 49, Kuhnke Tr. 691, 704, 705). This illustrates a cylinder similar to the Hanna HP cylinder above referred to in terms of the piloting surfaces, the position of the fluid energized seal ring and the shoulder which limits compression of the ring (Kuhnke Tr. 693–695, 702, 704, Ellis Tr. 885, 888, Fischer Tr. 1386, 1387, 1389, 1394).

23. Hanna Engineering Works in 1950 and 1951 also manufactured and sold cylinders designated as HPAC which are shown in Hanna Engineering Works' drawings Nos. 3–42266 and 3–137918 (DX 20, 21). These cylinders are similar to the HP cylinders above referred to except that the groove in the cylinder heads is rectangular rather than L-shaped (Kuhnke Tr. 635, 638, Fischer Tr. 1421, 1423, 1428). The head to tube seal arrangement of the HP cyclinders never was changed from 1950 to as late at 1962 (Kuhnke Tr. 710). However, after the initial manufacture and sale of the HPAC cylinders, Hanna Engineering Works used the same HPAC designation for some cylinders with a different construction (DX 50, Kuhnke Tr. 705–709). These later HPAC cylinders are not asserted as prior art in this action.

24. The Hanna HP and original HPAC cylinders had cylinder tubes piloting on the outer wall of the head, grooves with resilient seal rings and with shoulders abutting the heads to limit squeeze of the ring in the same manner that is illustrated and described in plaintiff's patent 2,842,284 (Tr. 732–735, 737–741, 1432, 1433). These Hanna HP cylinders and original HPAC cylinders utilized tie-bolts to secure the heads and cylinder tube together but tie-bolts and tie-rods are equivalent insofar as plaintiff's patent No. 2,842,284 is concerned (DX 201F, p. 30; Tr. 741, 773, 866, 944).

25. The cylinder described and claimed in plaintiff's patent No. 2,842,284 accomplishes no results different from what is accomplished in the Hanna HP and original HPAC cylinders. If the term "sealing relation" in plaintiff's claims is interpreted so as not to require sealing against fluid leakage, but only insuring against extrusion of the sealing ring, then the Hanna HP and original HPAC cylinders have such a "sealing relation" and all of the elements of claims 1, 2 and 5 of plaintiff's patent 2,842,284 (Tr. 742, 839, 840, 881, 1432, 1433). If the term "sealing relation" is interpreted to mean sealing against fluid leakage, then the claims of plaintiff's patent are still met by the Hanna HP and original HPAC constructions for the reasons that the finishes on the pilot surfaces and the small clearances on the pilot surfaces were such that sealing could be obtained with expansion of the cylinder barrel under pressure (Tr. 861, 1434, 1435). The Hanna HP cylinder is more likely than defendant's cylinders to have fluid tight sealing relation because the clearances are smaller and the finishes are finer in the HP cylinders (Tr. 1422).

26. The Patent Office record of plaintiff's application for patent No. 2,842,284, also fails to disclose any consideration of the publication of certain HPM cylinders illustrated in catalog No. 701 of the Hydraulic Press Manufacturing Company (DX 117, 118, 211, DX 207, No. 18). This publication illustrates a cylinder in which tie rods are used to clamp the cylinder tube between the heads at the ends of the cylinder, a seal ring, pilot surfaces and shoulder in the same relation as plaintiff's patent (Tr. 1430–1432). This publication differs from plaintiff's 1947 publication of its air cylinders (PX 1) to the same extent that the showing in Figure 4 of plaintiff's patent differs from the showing in plaintiff's 1947 publication, namely, that both Figure 4 and the HPM bulletin illustrate a shoulder on the cylinder tube which limits the squeeze on the sealing ring (Flick Tr. 1253, 1254).

Claims 1, 2 and 5 of plaintiff's patent read in terms and are met by the showing in this HPM publication, especially if the term "sealing relation" is interpreted as meaning only prevention of extrusion of the sealing ring rather than a fluid-tight seal (Fischer Tr. 1431, 1440, 1441). If the term "sealing relation" in plaintiff's claims is interpreted as meaning a fluid-tight seal between the pilot surfaces, then this publication still meets the substance of the claims because the pilot surfaces are illustrated as being in contact with one another (Flick Tr. 1252) and making them fluid tight is only a matter of degree as to the finish on the surfaces well within the skill of the art (Tr. 861–863, 1441). This HPM publication was published in November of 1953, which is well before the earliest date of invention asserted by plaintiff in this case, namely, the summer of 1954 (Kudlaty Tr. 1205).

27. Other prior art not considered by the Patent Office discloses the various elements of the cylinder of Patent No. 2,-842,284. The idea of providing pilot surfaces on the outer diameter of a cylinder tube and a recess in the cylinder head, in addition to the Hanna HP and the original HPAC cylinders, was old in Dawson patent No. 221,794 of 1879 (DX 207, No. 6), Krummel patent No. 2,690,765 (DX 207, No. 8) and British patent No. 393,-917 (DX 207, No. 9) (Tr. 1437). The use of a resilient seal ring in the groove of a head of a cylinder with the cylinder tube pressing against the ring was old in the Dawson and Krummel patents and in British patent No. 393,917 (Tr. pp. 1438, 1439). The provision of some means to limit the squeeze of the resilient seal ring was old prior to the alleged invention of patent No. 2,842,284, in British patent No. 393,917 and Belgian patent No. 524,-091 (DX 207, No. 10), the prior patent to Dawson showing a tapered fit for this purpose, and the Krummel patent showing a second cylinder (Tr. 1429, 1439, 1440). It was also old to prevent extrusion of a seal ring in an article about O-rings published in May, 1947 in Machine Design (DX 207, No. 11). This was published more than a year before

the filing date of patent No. 2,842,284 and discloses the desirability of limiting the compression on a fluid energized seal ring and so arranging parts that any "crack" is small enough as to prevent the ring from entering (Tr. 1376–1382, 1440, 1441). Viewed in the light of this prior art, the cylinder construction of patent No. 2,842,284 possesses no differences which are unobvious to a person having ordinary skill in the art at the time the patentee produced such construction.

28. By omitting specific description of the "special tool" and the finishes on the pilot surfaces, while reserving disclosure thereof as a trade secret, the patentee Flick in patent No. 2,842,284 did not set forth the best mode contemplated by him of carrying out the alleged invention.

29. The plaintiff stated to the Patent Office (DX 201F, page 22) in his application for patent 2,842,284 that the Becker patent was the only "type of connection" used in pneumatic and hydraulic equipment, without making reference to its own 1947 air cylinder constructions (PX 1) and its own prior constructions using an O.D. pilot (Flick Tr. p. 407). Thus the plaintiff failed to fully represent to the Patent Office the true status of the prior art known to it and in the public domain

30. Plaintiff contends that the cylinder construction of Flick patent 2,842,284 solved a "problem which had vexed and confounded the cylinder manufacturers." (Plaintiff's Brief, p. 28). The evidence does not support such a contention. Hanna experienced no difficulty with the seal arrangement of its HP cylinders (Tr. 742, 839, 840, 881). The only evidence of a problem offered by plaintiff related to its own cylinders and this was unconvincing especially in view of the statement of Mr. Kudlaty, plaintiff's former employee, that it was "nothing serious" (Tr. 1208). If plaintiff did have any problem with its 1947 hydraulic cylinder construction (PX 2), that has been overcome by plaintiff's use of the Hanna HP principles of the O.D. pilot, resilient seal ring at the end of the tube and the shoulder limiting the compression of the ring.

## LUG MOUNT PATENT NO. 2,798,777

31. Patent No. 2,798,777 issued July 9, 1957 as a result of an application for patent filed December 16, 1954, by plaintiff's president, Francis S. Flick, and chief design engineer, Walter J. Kudlaty, for an invention entitled "Cylinder Mounting", the patent now being owned by the plaintiff together with all rights thereunder including the right to recover for past infringement. The cylinder mount disclosed in Patent No. 2,798,777 is for mounting a cylinder against a machine tool base such that the cylinder head will be precisely positioned solidly against that base resulting in the stroke of the piston and cylinder device being properly directed, friction on the operating piston rod being minimized, and maximum cylinder power being maintained on each stroke.

32. The mount is a lug threaded directly upon the tie rod of the cylinder with a bolt hole passing through the lug in line with the tie rod. The sides of the lug are spaced inwardly of the periphery of the cylinder head insuring that the head, and not the lug, bears solidly against the mounting surface each time the cylinder is mounted.

33. The lug mount of this invention maintains the cylinder device rigidly in desired position; it provides reinforcement against bending of the heads of the cylinder under extreme internal pressures; and the placement of the lugs against the heads of the cylinder avoids beam action in the cylinder. The lug is also completely interchangeable with other mountings since it is threaded directly on the tie rods.

34. Defendant has admitted that it manufactured and sold mounts designated models R–E and N–E and that such mounts infringe claims 1, 2 and 4 of the patent in suit.

35. Defendant's accused models R2–E and N2–E are exemplified by Physical Exhibit P–34 and are charged to infringe claims 2 and 4 of the lug mount patent in suit. The accused Physical Exhibit P–34 of defendant comprises a bar with two lug parts, one at either end, connected by an intermediate piece of metal. The two lug parts on the one-piece bar are substantially identical in structure with the lugs of the accused models R-E and N-E which defendant admits are an infringement except for the intermediate piece of metal.

36. The two lug parts of the accused one-piece bar (Exhibit P–34) perform substantially the same function as the lugs specified in the patent in suit, and accomplish substantially the same result as the lug specified in claims 2 and 4 of the patent in suit. The one-piece bar mount of defendant (Physical Exhibit P–34) is an equivalent structure to that specified in claims 2 and 4, and infringes claims 2 and 4 of the patent in suit.

37. Defendant's defense is an alleged prior use by Entwhistle Manufacturing Company of a bar mount extending across the end of a cylinder as exemplified by a 1950 catalog illustration (Exhibit D–62).

38. The evidence produced by defendant fails to show that the alleged Entwhistle prior use embodies the invention claimed in the patent in suit. There is no evidence in the catalog or in the deposition testimony of Entwhistle employees that the bars were ever mounted inwardly of the periphery of the head to insure that the head was held precisely against a mounting surface.

39. Defendant also asserted that the patented structure does not disclose invention over the prior angle iron mount of plaintiff, model A71 (Exhibit P–1). The plaintiff's angle iron mount was deficient in meeting the advantages of the patented lug mount because the angle iron mount did not hold the head of the cylinder firmly against the mounting surface when under load.

40. The prior patented art cited by the defendant was substantially the same as and otherwise only cumulative over the art cited by the Patent Office during prosecution of the patent in suit. Such

cited prior art does not overcome the presumption of validity which attaches to the claims of the issued patent.

41. The main reliance by defendant is upon Craig Patent 1,820,269, which shows a simple angle iron mount having the same deficiencies as the prior angle iron mount of plaintiff which the patented lug mount replaced. The prior art patent of Christiansen 2,410,808 is in this same category.

42. Defendant also referred to certain prior patented art on chair leg bracing structures, including Vanselow 1,017,712, McArthur 2,035,488 and McArthur 2,035,489. None of these patents contain any teaching of the positioning of a lug mount in relation to a piston and cylinder device of the tie rod type such that the lug mount can serve to hold the tie rods in place and yet be positioned within the periphery of the cylinder head so that the cylinder head can be precisely positioned in intimate contact against the mounting surface and will not raise off the surface when under operative loads.

## COPYRIGHT REGISTRATION NO. A 338,557

43. Copyright registration No. A 338,557 issued in 1958 for plaintiff's bulletin JH–104N (PX 12), which, according to the registration and the evidence, was first published on April 14, 1958.

44. Plaintiff asserts only that defendant, on pages 9 and 10 of defendant's bulletin SR2–57B (DX 95, PX 43), has copied pages 20 and 22 respectively of plaintiff's bulletin JH–104N.

45. Page 20 of plaintiff's bulletin is entitled, "Aids for Preventing Excessive Bearing Wear and Column Failures" and contains mathematical information for determining what length of piston rod may be used for particular values of thrust and piston rod diameters. Such lengths are set forth in chart form with the thrust and diameters. Also included on the page are directions for using the chart and diagrams showing different mounting conditions and ratios for such conditions to be used in connection with the chart. The ratios used are Euler's ratios usable with Euler's mathematical formulas on column strength and for use with different mounting conditions for columns or rods (Flick, Tr. 495, 496). Instructions are given for the use of stop tubes. The diagrams are arranged in three groups on the left side of the page and the chart is located at the lower right-hand side of the page with wide vertical red and white stripes alternatingly covering adjacent columns.

46. Page 9 of defendant's bulletin entitled, "HOW TO DETERMINE IF OVERSIZED ROD IS NEEDED" relates to mathematical subject matter similar to that of page 20 of plaintiff's bulletin. It includes a chart with values of rod lengths corresponding to different values of axial thrust and piston rod diameters. Also included on the page in only the upper portion of the left column in a red outlined box is a single group of diagrams showing different cylinder mountings and Euler's ratios for the different mounting conditions. Elsewhere on the page are instructions for the use of the chart and diagrams, including instructions for the use of stop tubes. The arrangement and content of this page 9 are different from page 20 of plaintiff's bulletin (Tr. 1188–1193). Different nomenclature and different explanations of the use of the mathematical data are set forth on page 9 of defendant's bulletin and page 20 of plaintiff's bulletin, although the pages do have similarity of mathematical subject matter as to the information therein contained. Similarity of this subject matter also is found in publications of competitors of the parties prior to 1958 (DX 51, 52A). In a 1941 publication of Hanna (DX 51), the values of thrust went as high as 400,000 pounds, the highest value in defendant's charge.

47. In 1947 and 1948, plaintiff's predecessor, Miller Motor Company, published bulletins (DX 2 and 3) containing mathematical material identical in many respects with that of page 20 of plaintiff's bulletin JH–104N. The prior publi-

cations of Miller Motor Company thus included diagrams of cylinders with different mounting conditions and Euler's ratios corresponding to such conditions (Tr. 256–259, 495, 496), a chart showing piston rod lengths for different values of axial thrust and piston rod diameters, and instructions for using the diagrams and chart. The piston rod diameter values in the 1947 and 1948 publications and the axial thrust values up through 160,000 pounds and the values of piston rod length corresponding to these various values of axial thrust and piston rod diameters are, except for one obviously erroneous value at 100 pounds thrust and 5/8″ diameter, identical with the values appearing on page 20 of plaintiff's bulletin. The number of values up to 160,000 pounds is 207 of the total number of 219 values appearing in plaintiff's 1958 chart. The instructions of the prior 1947 and 1948 publications also refer to the use of stop tubes if the value of piston rod length as obtained from the chart exceeds 40.

48. The 1947 and 1948 publications of Miller Motor Company bear a notice of copyright 1947 and 1948 respectively of that company. A registration of the 1948 publication was obtained in 1960 in the name of William J. Reedy and Francis S. Flick, doing business as Miller Motor Company (DX 1), when, according to the testimony of plaintiff's president, Francis S. Flick, Miller Motor Company was no longer in existence (Tr. 322–324). However, the evidence establishes that plaintiff became and is the owner of all assets of William J. Reedy and Francis S. Flick, d/b/a Miller Motor Company. Plaintiff has asserted no rights in either of the 1947 and 1948 publications. The 1960 registration is not asserted in this suit.

49. Material similar to that of page 20 of plaintiff's bulletin JH–104N was published on pages 68, 69, 130 and 132 of the October 1953 issue of the magazine, "Applied Hydraulics" (DX 85, PX 42). The article was published in the name of Walter Kudlaty with the permission of plaintiff, but contains no notice of any copyright of plaintiff or Kudlaty in the subject matter.

50. The "Applied Hydraulics" article is similar to the 1947 and 1948 publications of Miller Motor Company in the use of a chart showing different values of piston rod length for given values of axial thrust and piston rod diameter, diagrams showing different cylinder mounting conditions and ratios therefor, and directions for the use of the chart and diagrams including a discussion of stop tubes where the piston rod length exceeds 40 inches (Flick, Tr. 260,262). The piston rod diameters on the chart in the 1953 Applied Hydraulics article are identical with those of the 1947 and 1948 publications and of plaintiff's bulletin JH–104N and the values of axial thrust are also the same up to a maximum of 16,000 pounds. With the exception of one obvious error (Tr. 262), the rod length values also are identical, there being 135 rod length values on the chart in the article, which values are more than one-half of the total number of 219 values appearing in plaintiff's 1958 bulletin.

51. In 1957, which was prior to the publication of defendant's bulletin SR2–57B and prior to the publication of plaintiff's bulletin JH–104N (Tr. 1110–1113, DX 84), defendant published form S120A (DX 81) which contains mathematical material later repeated on page 9 of defendant's bulletin SR2–57B (Tr. 1125, 1126). This material includes diagrams of cylinders with different mounting conditions, the different Euler's ratios for such conditions, and a chart showing values of piston rod length for different values of piston rod diameters and axial thrust. The values of rod diameter, length and thrust up through a maximum thrust of 160,000 pounds, with the exception of one value, which appears in defendant's 1958 bulletin SR2–57B, also appear in defendant's 1957 form S120A. The directions for that form also included use of stop tubes where the value of piston rod length exceeds 40 inches. The

instructions for the use of the charts and diagrams on page 9 of defendant's 1958 bulletin SR2–57B are similar to, but are somewhat more detailed than the directions appearing on defendant's prior 1957 form S120A (Tr. 1139).

52. The values of rod length for thrust values up to 160,000 pounds appearing on page 9 of the bulletin SR2–57B and on defendant's prior 1957 form S120A were obtained by Mr. John Harding, Vice President of defendant, through original calculations made in 1956 without any access to plaintiff's bulletin JH–104N which was not published until 1958 (Tr. 1115–1124, DX 86–1 to 86–24, 87–1, 87–2). The diagrams and instructions on page 9 of defendant's bulletin SR2–57B are similar to and constitute amplification of such material appearing on defendant's form S120A and are the result of independent and original creative effort of personnel of defendant. The values of rod length for thrust values above 160,000 pounds appearing in the chart on page 9 of defendant's bulletin SR2–57B were obtained by personnel of defendant through independent effort (Tr. 1127).

53. Page 22 of plaintiff's bulletin JH–104N relates to starting and stopping objects and is entitled, "Table for Quickly and Easily Determining Distances and Forces Required to Start and Stop Cylinder Piston Travel when Loads and Speeds are Known." On the upper portion of the page on the left side is a table of values for a so-called force factor for different values of acceleration and deceleration distance and velocities. Beneath the chart are listed symbols for different factors and formulae. The remainder of the page gives directions and examples for the use of the chart using the formulae. Wide vertical alternating red and white stripes cover adjacent vertical columns in the table.

54. Page 10 of defendant's 1958 bulletin SR2–57B, which plaintiff asserts was copied from page 22 of plaintiff's bulletin, is entitled, "INFORMATION ON FORCES REQUIRED FOR ACCEL-ERATION AND DECELERATION" and includes mathematical material of the same type as that of plaintiff. In addition to a chart with different values of a force factor for different given distances and velocities, there are formulae and directions for using the chart as well as examples. Defendant's page 10 uses different nomenclature, a different arrangement, and a different presentation of the same type of mathematical subject matter appearing on page 22 of plaintiff's bulletin (Flick, Tr. 522, 1188–1194).

55. Prior to the publication of plaintiff's bulletin JH–104N, plaintiff distributed to its salesmen an information sheet, "File 1182" (DX 105, PX 52), dated 1951 and containing information similar to that appearing on page 22 of plaintiff's bulletin JH–104N (Tr. 294, 295). "File 1182" thus included a force factor chart with all of the velocities appearing on the table on page 22 of bulletin JH–104N and, of nine values of acceleration and deceleration distance, seven of those on form 1182 are identical with those appearing on page 22 of bulletin JH–104N. File 1182 also included force factor formulae. File 1182 had no notice of copyright.

56. File 1182 is an engineering aid which is similar to other aids of plaintiff sent out to plaintiff's salesmen and used by them with customers of plaintiff (Tr. 294, 295). Copies of File 1182 also were given by plaintiff's salesmen to customers (Tr. 294, 295, 518). Although plaintiff's president testified at the trial that salesmen were cautioned to hold File 1182 for his personal use, plaintiff introduced no documents or other evidence to support this testimony and such testimony is contrary to Mr. Flick's prior testimony on depositions (DX 119, p. 162) that no instructions were given to the salesmen not to distribute File 1182 to the public generally. There was also evidence of distribution of copies of File 1182 by plaintiff to members of the public at a trade show in 1955 (DX 114, pp. 5, 6). This publication and the publications to customers by salesmen was a general

publication without restriction as to persons or purpose.

57. All of the values of K force factor appearing in the chart on page 10 of defendant's bulletin SR2–57B are the result of independent calculations of defendant, supervised by Mr. Bosi, chief engineer of defendant (Tr. 1260–1271). The mathematical formulae for obtaining these values were derived by Mr. Bosi using an engineering handbook owned by him since 1945 (Tr. 1263). The instructions appearing on page 10 of defendant's bulletin SR2–57B for the use of the associated chart are the result of independent creative writing of Mr. Bosi and Mr. John Harding (Tr. 1107, 1260, 1261).

58. Any similarities between the material on pages 9 and 10 of defendant's bulletin SR2–57B and pages 20 and 22 of plaintiff's bulletin JH–104N are due to the fact that the parties are dealing with the same mathematical subject matter and the same general procedures must be followed in using the material.

59. Pages 20 and 22 of plaintiff's 1958 bulletin JH–104N are adaptations, enlargements or revised versions of the prior 1947 and 1948 publications of Miller Motor Company, the 1953 "Applied Hydraulics" Article and the 1951 File 1182 (Tr. 259, 261, 297).

60. Plaintiff's copyright Registration A 338,557 was obtained as a registration of a completely new work. Plaintiff did not inform the Copyright Office and has not informed the public that pages 20 and 22 of its bulletin incorporate prior publications identically and are, in fact, revised versions of the prior publications. (Flick, Tr. 497, 498.)

61. No issue of unfair competition has been pleaded in this action, no discovery has been taken as to such an issue, and no proofs have been offered at the trial establishing the "likelihood of confusion" in the trade or showing any other unfair act of defendant.

62. The equities on all issues are with the plaintiff in Count III and with the defendants in Counts I and II.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter hereof.

2. Plaintiff is the owner of Flick patent No. 2,842,284, of which claims 1, 2 and 5 are in issue in this suit.

3. Plaintiff's patent No. 2,842,-284 must be strictly construed, since it is directed to subject matter in a crowded art.

4. The claims of plaintiff's patent No. 2,842,284 must be construed as limited to pilot surfaces on a cylinder tube and on an outer wall in a groove in a cylinder head which in and of themselves provide a fluid tight "sealing" relation.

5. Claims 1, 2 and 5 of plaintiff's patent No. 2,842,284 have not been and are not infringed by defendant's cylinder constructions designated R2, S2, T2 and N2.

6. Claims 1, 2 and 5 of plaintiff's patent No. 2,842,284 are anticipated by, and recite nothing more than elements and combinations old in various prior art uses, publications and patents not cited by and apparently not considered by the patent examiner in his examination of the application for patent No. 2,842,284. This prior art includes 1950–1953 HP and HPAC cylinders of Hanna Engineering Works, an HPM publication of 1953, Dawson patent No. 221,794 of November 18, 1879, Krummel patent No. 2,690,765 and British patent No. 393,917. Cylinder structures described and claimed in patent No. 2,842,284 obtain no results different from the results obtained by the use of similar elements in these patents and prior cylinder structures.

7. Plaintiff's patent No. 2,842,-284 is invalid and unenforceable because the specification is insufficient to inform a person with ordinary skill in the power cylinder art as to how "absolute concentricity" together with a sealing relation between pilot surfaces on the tube and barrel can be obtained.

8. Plaintiff's patent No. 2,842,-284 is unenforceable by reason of plain-

tiff's inequitable conduct in attempting to maintain its particular methods and nature of its "special tool" obtaining "absolute concentricity" and a sealing relation between pilot surfaces on the tube and barrel as a trade secret, while at the same time avoiding complete disclosure of these things in its patent No. 2,842,284, and while obtaining a patent monopoly thereon.

9. Plaintiff's patent No. 2,842,-284 is invalid, because in withholding specific information on the "special tool" used to finish the pilot surfaces, plaintiff has not complied with the statute requiring a patent applicant to set forth the best mode of practicing the invention contemplated by him (35 U.S.C. § 112.)

10. Plaintiff's patent No. 2,-842,284 is unenforceable by reason of plaintiff's inequitable conduct in misrepresenting the status of prior art, known to plaintiff, to the Patent Office.

11. Defendant is entitled to a judgment declaring claims 1, 2 and 5 of Patent No. 2,842,284 invalid and not infringed

12. Claims 1, 2 and 4 of the Flick et al Patent No. 2,798,777 in suit are good and valid in law.

13. Claims 1, 2 and 4 of the Flick et al Patent No. 2,798,777 in suit have been infringed by the defendant by its manufacture and sale of its model R–E and N–E devices exemplified by exhibits P–20a and P–20b since the issuance of Patent No. 2,798,777.

14. Claims 2 and 4 of Patent No. 2,798,777 have been infringed by defendant by its manufacture and sale of cylinder mount bars threaded on tie rods, designated model R2–E and N2–E and exemplified in exhibit P–34, since the issuance of the patent in suit.

15. The patent in suit was regularly issued by the United States Patent Office. In assailing the patent, defendant has a heavy burden of proof which it has not sustained.

16. The alleged prior use by Entwhistle and by plaintiff's own prior structure has not been proved by clear and convincing evidence to contain the invention claimed in Patent No. 2,798,-777, and therefore is not anticipatory.

17. The prior patented art cited by defendant does not anticipate the claims of Patent No. 2,798,777 at issue. The prior art is either the same or merely cumulative of the art cited by the Patent Office during the prosecution of the patent in suit, over which art the Patent Office allowed the claims of the patent in suit. Since all of the material prior art structures relied upon by the defendant were considered by the Patent Office, there is an added presumption of validity attaching to Patent No. 2,798,777.

18. Plaintiff is entitled to a judgment that Patent No. 2,798,777 is valid and infringed, that plaintiff is entitled to an injunction, that the defendant pay to plaintiff the amount of damages arising from the patent infringement as determined by an accounting.

19. Plaintiff is the owner of copyright registration A 338,557.

20. There is no infringement of this copyright registration because it has not been shown that defendant's publication and distribution of its free sales bulletin will in any way diminish or detract from the value of the plantiff's bulletin, which is distributed without charge to the trade, and for which registration A 338,557 was issued.

21. There is no infringement of copyright registration A 338,557 because of defendant's independent efforts resulting in the calculations and written material in its bulletin SR2–57B.

22. There is no infringement of plaintiff's copyright registration A 338,557 because no substantial copying of plaintiff's 1958 bulletin, for which the registration issued, has been shown.

23. Defendant has the right to expand and elaborate in its own form of expression upon its own prior 1957 bulletin on the same subject matter.

24. Copyright registration A 338,557 is invalid and unenforceable in so far as it purports to cover material in pages 20 and 22 of plaintiff's bulletin JH–104N and published prior to 1958 by plaintiff and others. Pages 20 and 22 of the bulletin for which registration A 338,557 issued are revised versions of earlier publications. Defendant has not substantially copied the narrow differences of the plaintiff's 1958 bulletin or other prior works.

25. Page 22 of bulletin JH–104N is in the public domain in view of the plaintiff's publication of the same material without copyright notice prior to 1958.

26. The substance of page 20 of bulletin JH–104N is in the public domain in view of the publication of the substance thereof in "Applied Hydraulics" in 1953 without notice of copyright by plaintiff.

27. Registration A 338,557 cannot be construed as dominating the ideas or mathematical relations expressed therein.

28. A case of unfair competition has not been pleaded in this action, no discovery has been taken on such an issue, and plaintiff's proofs do not show a case of unfair competition.

29. Defendant is entitled to a judgment declaring that copyright registration A 338,557 is invalid in so far as it purports to cover material in pages 20 and 22 of plaintiff's Bulletin JH–104N and published prior to 1958 by plaintiff and others; plaintiff's copyright is unenforceable with respect to material published prior to 1958; and plaintiff's copyright is not infringed by defendant's bulletin in suit.

30. The complaint is dismissed as to Counts I and II thereof, and the third counterclaim of defendant is dismissed. Defendant is entitled to a judgment awarding costs relating only to the copyright in suit. No other costs and no attorneys' fees are awarded to either party.