**FLICK–REEDY CORPORATION,**
Plaintiff-Appellant,

v.

**HYDRO–LINE MANUFACTURING COMPANY, Defendant-Appellee.**

**FLICK–REEDY CORPORATION,**
Plaintiff-Appellee,

v.

**HYDRO–LINE MANUFACTURING COMPANY, Defendant-Appellant.**

**Nos. 14804, 14805.**

United States Court of Appeals
Seventh Circuit.

Sept. 14, 1965.

Rehearing Denied Nov. 10, 1965.

Donald L. Welsh, Malcolm S. Bradway, Chicago, Ill., for Hydro-Line Mfg. Co.

William R. McNair, James C. Wood, Lloyd W. Mason, Chicago, Ill., for Flick-Reedy Corp.

Before CASTLE and KILEY, Circuit Judges, and MERCER, District Judge.

KILEY, Circuit Judge.

Plaintiff, Flick-Reedy Corporation, sued Hydro-Line Manufacturing Company for infringement of United States Patents No. 2,798,777 and No. 2,842,284,

and its registered copyright A–338557. The district court, in findings of fact and conclusions of law reported at 241 F. Supp. 127 (N.D.Ill.1964), decided in favor of Flick-Reedy with respect to Patent No. 2,798,777 and in favor of Hydro-Line with respect to Patent No. 2,842,284 and the copright. Flick-Reedy has appealed in case No. 14804 and Hydro-Line in case No. 14805.

Hydro-Line and Flick-Reedy are competitors in the manufacture and sale of precision, machine tool grade, air and hydraulic piston and cylinder devices, known in the trade as cylinders. The patents in suit, owned by Flick-Reedy, were a sealing arrangement to improve the pressure capacity of hydraulic cylinders by virtue of preventing the escape of fluid from the cylinders (2,842,284), and a device for mounting cylinders rigidly to a base in order to maintain accurate thrust of the piston in the cylinder (2,798,777). The copyright covered a trade booklet.

## The Copyright

The issue involved pages 20 and 22 of the 32-page booklet "Hydraulic Cylinders," copyrighted in 1958 and first published on April 14, 1958, which Flick-Reedy charges was infringed by pages 9 and 10 of a similar publication of Hydro-Line. These booklets were distributed without cost to users of cylinders, providing useful information while at the same time keeping the manufacturer's name and products before the user. The pages in question contain mathematical data and formulae with explanations for their use in determining proper sizes of piston rods under various conditions and in determining acceleration and deceleration distances.

The district court concluded that the copyright was invalid and unenforceable because the copyrighted material was a revision of uncopyrighted material published previously by plaintiff and thus in the public domain; that Hydro-Line had not infringed the copyright because it had not substantially copied the Flick-Reedy material, but had arrived at its own version independently; and that

there was no infringement "because it has not been shown that defendant's publication and distribution of its free sales bulletin will in any way diminish or detract from the sale of the plaintiff's bulletin, which is disrtibuted without charge to the trade. * * *" We think the district court erred in applying the law and in certain of the findings of fact on which its conclusions and the decree of invalidity rested.

■ In the first place, "abridgments, adaptations, arrangements * * * or works republished with new matter * * *" are subject to copyright by the very terms of the Act, 17 U.S.C. § 7; and the court erred in precluding infringement for the reason that some of the material was already in the public domain. The arrangement, expression and manner of presentation of the copyrighted pages, however, was not in the public domain. Secondly, the question is not whether the computations in the Hydro-Line charts were independently arrived at, but whether the Flick-Reedy expression and presentation of the computations, formulae and explanations were copied by Hydro-Line. On this question we think the district court clearly erred.

In Sampson & Murdock Co. v. Seaver-Radford Co., 140 F. 539 (1st Cir. 1905), footnoted by the Supreme Court in Mazer v. Stein, 347 U.S. 201, at 218, 74 S.Ct. 460, 98 L.Ed. 630 (1954), several general rules of copyright law are set forth, at pages 542–43, which are pertinent here. Applying the rules stated there to the issue before us, we see that Hydro-Line had the same purpose in compiling and publishing its material as Flick-Reedy had, and that it did not merely use the latter's work as a starting point for further development of the ideas expressed. It had no right to avail itself of Flick-Reedy's labor, in rearranging and reexpressing the material, to save itself work or trouble, nor to use its bulletin to interfere seriously with Flick-Reedy's gainful use of its bulletin for prestige and trade in the cylinder market. The question of infringement is whether Hydro-Line's arrangement and

expression is its own, so as to make its use fair to Flick-Reedy.[1]

The district court did not include in its findings the testimony of Hydro-Line's vice-president that he had a copy of Flick-Reedy's bulletin before him in preparing the accused pages and that this copy was sent along with other "layout material" to Hydro-Line's advertising agency, which did the final preparation of the accused bulletin. The witness testified that this was done to avoid duplication.

We have compared the corresponding pages of the publications: The lines blocking out the charts and the illustrations are red in the accused pages, and in Flick-Reedy's they are black, with red shading in alternate columns. There are differences in the wording of titles of parts of pages or in the location of titles, e. g., on Flick-Reedy's page 20 the head title is "Aids for Preventing Bearing Wear and Column Failures," and the corresponding title on Hydro-Line's page 9 is "How to Determine if Oversize Rod is Needed." But in the lower left hand corner of page 9 is the heading "Information for Avoiding Excessive Bearing Wear." In the right hand column of both pages 9 and 20 are set forth the steps required "to determine if an oversize piston rod is required * * *" (page 9); and "to determine minimum piston rod diameter on push stroke cylinders" (page 20). The left hand side of each page is devoted to illustrations of various types of cylinders with the values of "L" in the formula indicated and information on avoidance of excessive bearing wear by the use of stop tubes. The right hand side of each page contains the steps for determining required piston rod diameters, and in the bottom right hand corner of each page is a table showing rod diameters for various thrusts and rod lengths.

Both Flick-Reedy's page 22 and Hydro-Line's page 10 contain on the left half of each page large, practically identical numerical charts titled "Information on Forces Required for Acceleration and Deceleration" (page 10) and "Table for Quickly and Easily Determining Distances and Forces Required to Start and Stop Cylinder Piston Travel When Loads and Speeds are Known" (page 22). In this instance again Hydro-Line's chart is blocked out in red lines, with Flick-Reedy's in black with the two left hand columns of figures shaded in grey and the other alternate columns shaded in red. The right hand portion of each page is taken up with formulae and explanations and examples for their use in connection with the chart in determining acceleration and deceleration values.

Flick-Reedy's certificate of registration is prima facie evidence of the validity of its copyright and Hydro-Line had the burden of overcoming this presumption of validity. 17 U.S.C. § 209; Wihtol v. Wells, 231 F.2d 550, 553 (7th Cir. 1956). The district court erred in holding that this burden was met by showing that some of the computations and formulae in Flick-Reedy's bulletin were in the public domain, for the copyright was valid as a revision and new arrangement of such material.

From an examination of the exhibits and the testimony we also conclude that the district court clearly erred in finding no infringement and no substantial copying of the two pages of Flick-Reedy's bulletin in question by Hydro-Line.

The district court erred also in finding that there was no showing that Hydro-Line's publication and distribution of its free sales bulletin will in any way detract from the value of Flick-Reedy's bulletin. The number of pages charged to be infringed is small (only two of thirty-two), but the evidence showed that these were the most important pages from the standpoint of keeping the bulletin in front of potential

---

1. We set aside the question of the computations in the charts, which the district court could well have found, if need be, were independently calculated by Hydro-Line. We are not concerned with a claim of infringement of the calculations, but with the manner in which the calculations, along with other matter, was presented.

customers. The major part of each bulletin is given over to advertisements, performance charts and other data pertinent to the manufacturer's products. On the pages in question, however, appears information useful generally to users of cylinders. One of the chief purposes of distributing this information is to keep the advertising before the users. A particular presentation of the information which will cause a user to consult the bulletin can therefore be of substantial value to the manufacturer who distributes the bulletin.

We reverse the judgment of the district court insofar as it holds the copyright on Flick-Reedy's pages 20 and 22 invalid and not infringed, and we remand for further proceedings with respect to the relief prayed for.

### Patent No. 2,842,284

The district court's findings of fact 7 through 15, reported at 241 F.Supp. 127, 130–32, and which we adopt, describe the plaintiff's patented seal for use in preventing leakage between the end of a cylinder tube and the head. The findings of fact and the patent specifications and claims make clear that an essential element of the patent is the "sealing relation" between the outer machined surface of the reduced thickness at the end of the tube and the outer surface of the recessed groove in the head. This sealing relation is described in terms of "absolute concentricity," "zero clearance" and a "metal to metal contact provided between the head and the cylinder tube [which] performs the function of sealing against fluid leakage. * * *" The specifications state that the outer surface of the reduced thickness section is formed with a "special tool." This "special tool" is not disclosed or described in the specifications or claims.

Flick, the president of plaintiff and inventor of the seal, testified that the "special tool" was an "aid" in achieving the required concentricity and that he contemplated using the tool at the time the patent application was filed. When asked what the tool was, Flick stated

[W]e must use a mechanical tracer tool. I am sorry to have to tell you what it is. These sort of things cost us a lot of money to develop.

Any one of the four types, mechanical, air tracer, electronic tracer, or hydraulic tracer tool can be used.

He further told the court

Your Honor, there are times when you could apply for a patent, I believe, but the enforcement thereof, where it is a tool used for an exclusive purpose in a plant, the enforcement thereof would be most difficult, and you may elect to try to keep the information of a secret nature.

    \*    \*    \*    \*    \*    \*

This is what we elected to do.

Flick also testified that he did not believe that mechanical tracer tools, which his company used, were well known for this purpose, and there was expert testimony that a person skilled in the art would not know from reading the patent specifications what was meant by the "special tool."

The district court concluded that the patent is invalid because plaintiff withheld specific information concerning the "special tool" used in finishing the metal surfaces, in violation of 35 U.S.C. § 112. That Section, in pertinent part, provides:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, *and shall set forth the best mode contemplated by the inventor of carrying out his invention.* (emphasis supplied.)

The Constitutional provision and implementing patent law are intended to reward with a seventeen-year monopoly an inventor who "refrains from keeping his invention a trade secret." Universal Oil Products Co. v. Globe Oil & Refining Co., 322 U.S. 471, 484, 64 S.Ct. 1110, 1116, 88 L.Ed. 1399 (1944). The

*quid pro quo* for the monopoly is disclosure which will enable those skilled in the art to practice the invention at the termination of the monopoly, and to "warn the industry concerned of the precise scope of the monopoly asserted." Id. To accept the monopoly and withhold the full disclosure of the "best mode contemplated by the inventor," which will result in a contribution to the common good upon expiration of the monopoly is the "selfish desire" against which 35 U.S.C. § 112 is directed. Application of Nelson, 280 F.2d 172, 184 (CCPA 1960). The record before us shows that the patent specifications disclosed neither what the special tool is nor where a description of it may be found in any prior art. Application of Hirsch, 295 F.2d 251, 254, 49 CCPA 745, (1961), cert. denied Hirsch v. Ladd, 369 U.S. 888, 82 S.Ct. 1162, 8 L.Ed.2d 288 (1962).

We hold that the district court's findings on this point are not clearly erroneous and that its conclusion of invalidity because specific information about the "special tool" was withheld in violation of 35 U.S.C. § 112 is supported by substantial evidence. On this issue we affirm the judgment. Since we hold that the patent was invalid on this basis, we need not consider the other contentions raised with respect to this issue.

### Patent No. 2,798,777

Plaintiff charged that claims 1, 2 and 4 of its patent on lug mounts designed to hold a cylinder rigidly to a machine tool base were infringed by defendant's manufacture and sale of its now obsolete models NE and RE mounts and that claims 2 and 4 are infringed by defendant's current type of mounting device, models $N_2E$ and $R_2E$. Defendant admits that if the patent is valid it was infringed by its models NE and RE, but asserts that the patent is invalid and denies infringement by its $N_2E$ and $R_2E$ devices.

The district court found the patent valid and infringed by all four types of defendant's mounts and enjoined defendant from further infringement and ordered an accounting. We adopt the findings and conclusions of the district court, 241 F.Supp. 127, insofar as they find claim 1 of the patent valid and infringed by defendant's models NE and RE, but we reverse the judgment insofar as it holds claims 2 and 4 of the patent valid and infringed by defendant's models $N_2E$ and $R_2E$.

Plaintiff's mount consists of a lug, or extended square nut, one of which is threaded directly upon each end of the tie rods at the bottom of a cylinder where it is to be attached to a base. The tie rods pass through holes in each of the corners of the heads and have the function of holding together the entire cylinder assembly. Prior mounting devices consisted of angle iron or solid blocks of metal, drilled to match the tie rods, and fastened onto the tie rods with separate nuts. The cylinder was then mounted on the base by means of mounting bolts or other fasteners placed vertically through the angle iron or mounting block and the base. Plaintiff's single-lug mounts have mounting bolt holes drilled through them in line with, and perpendicular to, the tie rod threads. The lugs are of such size that when threaded upon the tie rods in mounting position, the plane of the bottom surface of the lug is slightly inward from the plane of the bottom surface of the head, with the result that pressure from tightening the mounting bolt is transmitted through the tie rod; and the head, and not the lug, is held precisely against the base.

Advantages claimed by the patentees for their mounting lugs were (1) the rigid mounting of head to base because of the spacing of the lugs inwardly from the periphery of the head, (2) added rigidity and stability because the mounting bolts are longitudinally in line with the tie rods, (3) ease of attachment or removal without substantially disturbing the cylinder assembly, (4) interchangeability with other types of mounts, and (5) compact size, assuring minimum interference with cylinder operation and placement. The chief item of prior art relied upon by defendant in support of its claim of invalidity is the Modernair mount,

which consists of a solid bar fastened to the tie rods by separate nuts and with mounting bolt holes spaced inwardly from the tie rod holes. The district court found that there was no evidence that the solid bar of the Modernair mount had ever been mounted inwardly from the periphery of the head to insure that the head was held precisely against the mounting surface, and concluded that neither the Modernair device, nor the other art cited by defendant anticipated plaintiff's mounting device. This conclusion is supported by substantial evidence and findings of fact which are not clearly erroneous.

While each of the separate elements of plaintiff's device may be somewhat minimal, we think that the combination of these elements into a single device achieving the advantages listed above produced a "new, useful and unobvious" whole, Anderson Co. v. Sears, Roebuck and Co., 265 F.2d 755, 762–63 (7th Cir. 1959), and that the district court did not err in holding that defendant failed to overcome the presumption of validity of claim 1 of plaintiff's lug patent.

The main feature by which plaintiff distinguished its lug mount patent over the prior art, and the chief advantage asserted for it here, is described in claim 1 as follows:

said lugs having sides spaced slightly inwardly of the sides of the adjacent head to secure the head against the base * * *.

This feature is not an element of claims 2 and 4, which plaintiff charges are infringed by defendant's N2E and R2E mounts. Lacking this element, claims 2 and 4 are not sufficiently distinguished over the prior art and do not rise to the dignity of invention within the rule of Pleatmaster, Inc. v. J. L. Golding Mfg. Co., 240 F.2d 894 (7th Cir. 1957). We therefore hold that claims 2 and 4 of plaintiff's lug mount patent are invalid. Since we hold the claims invalid, we need not consider the question of infringement with respect to them.

The judgment is affirmed as to Patent No. 2,842,284 and reversed as to the copyright in case No. 14804; and the judgment is affirmed in part and reversed in part as to Patent No. 2,798,777 in case No. 14805, and the cause is remanded for further proceedings in accordance with this opinion.