Charles R. CHRISTIANSON and International Trade Services, Inc., etc., Appellee,

v.

COLT INDUSTRIES OPERATING CORP., Appellant.

Appeal No. 85–2644.

United States Court of Appeals, Federal Circuit.

June 25, 1987.

Anthony M. Radice, Parker, Auspitz, Neesemann & Delehanty, P.C., New York City, argued for appellant. With him on brief were Joseph C. Markowitz and Kim J. Landsman. Also on brief was Robert L. Harmon, William Brinks Olds Hofer Gilson & Lione, Ltd., Chicago, Ill., of counsel and John V. Patton and James D. Mowen, Bozeman, Neighbour, Patton & Noe, Moline, Ill., of counsel.

John C. McNett, Woodard, Weikart, Emhardt & Naughton, Indianapolis, Ind., argued for appellee. With him on brief was Spiro Bereveskos. Also on brief was Stuart R. Lefstein, Katz, McAndrews, Durkee, Balch & Lefstein, P.C., Rock Island, Ill.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and BISSELL, Circuit Judge.

MARKEY, Chief Judge.

Appeal from a summary judgment of the United States District Court for the Central District of Illinois in favor of Charles R. Christianson and International Trade Services, Inc. (ITS) (Christianson). The court held Colt Industries Operating Corp. (Colt) liable under: (1) sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26) and sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2), because Colt asserted trade secrets the court deemed "invalid" for failure of Colt to disclose them in nine U.S. patents the district court declared invalid for noncompliance with best mode and enablement provisions of 35 U.S.C. § 112; [1] and (2) the

---

[1]. The nine U.S. patents declared invalid are: (1) No. 3,236,155 issued February 22, 1966, entitled "Firearm Having an Auxiliary Bolt Closure Mechanism"; (2) No. 3,292,492 issued December 20, 1966, entitled "Trigger Mechanism"; (3) No. 3,301,133 issued January 31, 1967, entitled "Mechanism For Changing Rate of Automatic Fire"; (4) No. 3,366,011 issued January 30, 1968, entitled "Buffer Assembly Having a Plurality of Inertial Masses Acting in Delayed Sequence to Oppose Bolt Rebound"; (5) No. 3,440,751 issued April 29, 1969, entitled "Firearm Box Magazine With Straightend and Intermediate Arcuate Portions"; (6) No. 3,453,762 issued July 8, 1969, entitled "Disposable Magazine Having a Protective Cover and Follower Retaining Means"; (7)

theory of tortious interference with contract. *Christianson v. Colt Industries Operating Corp.*, 609 F.Supp. 1174, 227 USPQ 361, *final judgment on liability*, 613 F.Supp. 330 (C.D.Ill.1985). We reverse in part, vacate in part, and remand.

### Introduction

The present appeal reflects a monumental misunderstanding of the patent jurisdiction granted this court. An appeal in a pure and simple antitrust case is here solely because an issue of patent law appears in an *argument* against a *defense*. Christianson asserted rights that arise under, and only under, antitrust law. Colt's defense is its trade-secret rights under state law. Christianson's argument against that defense is that Colt lost its secrets because it did not disclose them in its patent applications. The district court's opinion said Colt's patents were invalid. Colt requested inclusion of that view in the final judgment and brought its appeal here.

### Background

#### (a) The Earlier Patent Suit

On September 2, 1983, Colt sued Springfield Armory, Inc. and Rock Island Armory, Inc. (Springfield) for patent infringement [2] and other activities. Colt sought to preliminarily enjoin performance of Springfield's contract to sell M–16–type rifles to El Salvador, alleging unauthorized use of Colt's production trade secrets. Springfield said it copied the weapon by reverse engineering. Finding that Springfield had copied Colt's production secrets, the district court granted a preliminary injunction on October 7, 1983.

No. 3,619,929 issued November 16, 1971, entitled "Magazine With Anti-Double-Feed Indentations in the Side Walls"; (8) No. 3,771,415 issued November 13, 1973, entitled "Rifle Conversion Assembly"; and (9) No. 3,977,296 issued August 31, 1976, entitled "Hydraulic Buffer Assembly For Automatic or Semiautomatic Firearm".

2. Colt's allegations of patent infringement were based on U.S. Patent No. 3,618,248 issued November 9, 1971, entitled "Buttstock Assembly With a Latchable Door For a Compartment Formed Therein", and three patents listed in note 1, *supra,* as numbers (4), (5), and (7).

Convinced that former Colt employee Christianson disclosed its secrets to Springfield, Colt added him and his company, ITS, as parties on November 23, 1983. When the court denied a preliminary injunction against Christianson and ITS, Colt dismissed its complaint against them.

On October 17, 1983, Springfield appealed to this court, but abandoned its reverse engineering theory, saying the weapon could *not* be reverse engineered. Springfield then presented the novel theory that its inability to mass produce a particular type (M–16) of *rifle* established a failure of Colt's patents on rifle *parts* to comply with 35 U.S.C. § 112 ¶ 1.

On March 20, 1984, this court affirmed, *Colt Industries Operating Corp. v. Springfield Armory, Inc.*, 732 F.2d 168 (Fed.Cir.1984) (unpublished opinion), but noted in dicta that, "Although Springfield's 35 U.S.C. § 112 arguments, particularly relating to best mode, have an appearance of validity, ... the evidence of record is totally lacking in specifics." This court noted a distinction between a rifle and rifle parts and listed the "specifics" of evidence required (none of which appears of record here).

#### (b) This Antitrust Suit [3]

On May 14, 1984, Christianson filed an inartful complaint against Colt "pursuant to Section 4 ... (15 U.S.C. § 15) and Section 16 of the Clayton Act (15 U.S.C. § 26) for damages, injunctive and equitable relief by reason of its violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 & 2),

3. On June 27, 1984, the district court consolidated the patent and antitrust suits for discovery and trial under Fed.R.Civ.P. 42(a). On August 1, 1984, the district court ordered that discovery in the former could be used in the latter. On September 5, 1984, the patent suit was settled on terms set forth in a Consent Judgment and an ancillary agreement. Under that judgment, Springfield was permanently enjoined from selling M–16 rifles to El Savador and from using Colt's proprietary drawings and information in the manufacture or sale of M–16 rifles, *unless* Colt were later determined to have lost its trade secret rights.

as hereinafter alleged." [Complaint ¶ 1, JA at 39].

After alleging that Colt controlled "nearly 100%" of the market for M–16 rifles and parts, acquired patents in "the late 1950's" and "early 1960's," and granted licenses extending beyond the life of its patents, Christianson inserted this disjointed statement in Count I of the complaint:

18. The validity of the Colt patents had been assumed throughout the life of the Colt patents through 1980. Unless such patents were invalid through the wrongful retention of proprietary information in contravention of United States Patent Law (35 U.S.C. § 112), in 1980, when such patents expired, anyone "who has ordinary skill in the rifle-making art" is able to use the technology of such expired patents for which Colt earlier had a monopoly position for 17 years.

Count I continued with allegations that Colt gave and withdrew permission for ITS to make and sell M–16 parts, and drove ITS out of business by threats to suppliers and customers and by joinder and dismissal of ITS in *Springfield.*

On October 19, 1984, Christianson added a count II, alleging tortious interference with Christianson's business relationships.

In its answer to paragraph 18, Colt said it "admits that Colt's patents are valid until the end of their respective lifetimes" and admitted that "anyone with ordinary skill in the art is entitled to and is able to use any and all of Colt's expired patents for any legitimate purpose." [4]

Colt counterclaimed, alleging jurisdiction under 28 U.S.C. §§ 1331, 1332(a), 1338 (trademark infringement), 15 U.S.C. § 1121, Fed.R.Civ.P. 13, pendent and ancillary jurisdiction, and that Christianson: (a) improperly obtained and used Colt's confidential information, proprietary drawings, and other trade secrets pertaining to its production of M–16 rifles; (b) breached contractual duties; (c) tortiously interfered with Colt's contracts; and (d) willfully violated section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and Illinois state law by falsely designating its products.

Christianson answered Colt's counterclaims, substantially repeating paragraph 18, *supra,* of Count I, and alleging that Colt fraudulently procured its patents by concealing "patent technology" and is now asserting that "technology" as trade secrets and thereby extending the patent grant.

Christianson's motion for summary judgment sought only a declaration that Colt's trade secrets were invalid. It stated, "[b]asic and fundamental to the subject lawsuit is whether or not at any of the times described in the complaint and counterclaims [Colt] possessed and was entitled to maintain as exclusive proprietary rights its claimed trade secrets with respect to the M–16 rifle and rifle parts," and that "none of these trade secrets were [sic] valid [sic] as a matter of law."

### (c) District Court Opinion

Focusing on 35 U.S.C. § 112, the district court granted Christianson's motion on Counts I and II and denied Colt's cross-motion. 609 F.Supp. 1174, 227 USPQ 361. The district court said "[t]he thrust of [Christianson's] motion is the position that Colt cannot assert its claim of trade secrecy against [Christianson] because it had, in its now-expired patents, failed to make the full disclosures of its claims of invention as required by 35 U.S.C. § 112," *id.* at 1176, 227 USPQ at 362; "[t]he disclosures made by Colt satisfied neither the enablement nor best mode requirements of 35 U.S.C. § 112," *id.* at 1178, 227 USPQ at 363, and that each of Colt's "patents was invalid from its inception and that any claim of trade secrecy as to the nondisclosed information is likewise invalid," *id.* at 1184, 227 USPQ at 367. The district court said this court's dicta in *Springfield:*

can and should be accepted as the statement of a recognition by [the Federal

---

4. Colt apparently meant that its patents "had been" valid (patents issued in the "late 1950's" and "early 1960's" were expired in 1984 when Christianson's complaint was filed), and that anyone is entitled to use the *information* in its expired patents (the important but sole purpose of an expired patent, which has no further exclusionary use *as a patent*).

Circuit] that possibly serious issues of Colt's compliance with Section 112 could exist, subject to substantiation by adequate evidence. To that extent, and to that extent only, that statement does have a bearing on the issues now before this court.

*Id.* at 1177, 227 USPQ at 363.

Instructed to prepare a final judgment and order, the parties proposed, and the court's final judgment and order included, numerous matters never presented to the court. It was during this process that Colt requested a holding that its own patents, as stated in the court's opinion, were invalid.

On July 19, 1985, the district court entered its "Final Judgment on Liability" which stated:

Patent infringement is not an issue in this case. This court has jurisdiction over the subject matter of this action and the parties before it under 28 U.S.C. § 1332 and 15 U.S.C. §§ 4, 15 and 26. Venue in this district is proper under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 15.

613 F.Supp. 330, 331.

The district court ordered: (a) a trial on damages and a hearing on attorney fees; (b) Colt's nine patents are invalid from inception; (c) Colt's rights in its secrets on production of the M–16 rifle are void and unenforceable; (d) Colt is enjoined from asserting any form of trade secret in any technical information relating to production of the M–16 rifle, including any that "came into existence prior to entry of this order"; (e) Colt shall preserve until June 1, 1989 such technical information and provide it upon request to Christianson within 30 days of such request; (f) Colt may no longer designate its documents and drawings as protected trade secrets; (g) Colt shall serve this order on Christianson's suppliers and customers; (h) Colt's counterclaims alleging tortious interference with Colt's contracts are dismissed; and (j) that final judgment be entered for Christianson on Counts I and II of the complaint.[5]

The court certified under Fed.R.Civ.P. 54(b) and 28 U.S.C. § 1292(b) that an appeal may materially advance the termination of the litigation and stayed the judgment and all proceedings pending appeal. Fed.R.Civ.P. 62(c).

### (d) Actions of the Appellate Courts

Colt appealed here, citing 28 U.S.C. §§ 1292(a)(1) and 1295. On August 13, 1985, Christianson moved to transfer the appeal to the U.S. Court of Appeals for the Seventh Circuit under 28 U.S.C. § 1631, saying this court lacked jurisdiction because the district court's jurisdiction was not based on 28 U.S.C. § 1338, Christianson's antitrust action not being one "arising under" the patent laws. 28 U.S.C. § 1338. Colt opposed the motion. On December 4, 1985, this court granted Christianson's motion in a short unpublished order that did not explain why jurisdiction was lacking, it being expected that the parties and others interested would recognize that it was based on the reasons and authorities set forth in the movant's brief.

Before the Seventh Circuit, the parties submitted briefs, and on May 8, 1986, argued the case. Neither party raised the jurisdictional issue. In *Christianson v. Colt Industries Operating Corp.*, 798 F.2d 1051, 230 USPQ 840 (7th Cir.1986), the Seventh Circuit elected *sua sponte* to review our transfer order, saying it has "considerably less persuasive force than a full opinion on the complex questions presented," and that it was not binding as law of the case because it was "clearly wrong." *Id.* at 1056–57 & n. 7, 230 USPQ at 844–45 & n. 7. Based on Colt's brief on Christianson's original transfer motion, the Seventh Circuit re-transferred the appeal to this court.

Noting that 28 U.S.C. § 1338 incorporates traditional rules of statutory "arising under" jurisdiction, the Seventh Circuit said two types of cases may arise under the

---

5. The parties have offered no indication of any basis for the district court's rulings on matters that were not presented in either motion for summary judgment, such as Count I (antitrust liability) and Count II (Colt's tortious interference with Christianson's business relationships).

patent laws for purposes of § 1338: (1) those in which patent law "creates" the cause of action, (Justice Holmes' "creation" test); and (2) those in which "the vindication of a right under a non-patent law calls for a determination of the meaning or application of a patent law." *Id.* at 1059, 230 USPQ at 847. Recognizing the import of the well-pleaded complaint rule, the court nonetheless said it may "recharacterize" the pleadings, using what it found in pleadings other than the complaint (here, the summary judgment motions). *Id.* at 1060, 230 USPQ at 847 (citing cases).

Because the complaint requested no relief under the patent laws, the Seventh Circuit said the action does not meet the "creation" test, but "[t]he crux of the plaintiff's case is that, by failing to make the necessary disclosures under section 112, Colt is extending its exclusionary rights beyond the 17–year life of the M–16 patents, a result inconsistent with the objectives of the patent system." 798 F.2d at 1061, 230 USPQ at 848. Applying its alternative test, the court held that, "because Christianson's right to recovery, although ostensibly based on the antitrust laws, 'would be defeated by one or sustained by an opposite construction' of the patent laws," (quoting *Beghin-Say International, Inc. v. Ole-Bendt Rasmussen*, 733 F.2d 1568, 1570, 221 USPQ 1121, 1123 (Fed.Cir. 1984)), the action does arise under the patent laws. *Id.*

Lastly, the Seventh Circuit rejected Christianson's interpretation of its own complaint. Christianson said the complaint's reference to section 112 was only in anticipation of Colt's trade secret defense and counterclaim. Describing that argument as "disingenuous, to say the least," the court said the "complaint may be sketchy, but it leaves no doubt that Christianson was relying on that pleading (Count 1 of which was never amended) to obtain a determination that Colt's patent applications failed to comply with disclosure requirements of § 112," and that "[t]he summary judgment proceedings confirm our

initial interpretation of the complaint." 798 F.2d at 1062, 230 USPQ at 849.

On October 2, 1986, Christianson moved to dismiss the re-transferred appeal, but did not suggest a re-re-transfer to the Seventh Circuit. Colt opposed the motion. Four days later, the parties argued the appeal on its merits before this court.

## ISSUES

(1) Whether this court has jurisdiction of this appeal.

(2) Whether the interest of justice compels a decision by this court at this time.

(3) Whether the district court erred in granting Christianson's motion for summary judgment.

## OPINION

### (1) Jurisdiction

### (a) Federal Courts Improvement Act

As evidenced by our respectful disagreement with our sister circuit in this opinion, this court's jurisdiction in some cases is less than crystal clear.[6] With five years of experience under the Act, it may be time for Congress to make its intention even more clear to those willing to look for it in the statute and legislative history. In the meantime, clarity may be advanced by vigorous, straightforward, and complete expression of views by all concerned.

The Seventh Circuit has here provided its view on the part of this court's jurisdiction granted in section 1295(a)(1) of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25 (1982) (FCIA). Before the FCIA, the regional circuits had jurisdiction of appeals like this. We find no basis on which to posit a congressional intent to deprive the regional circuits of jurisdiction over *every* appeal that remotely involves a patent issue.

Congress is the *source* of jurisdiction granted federal courts, other than the Supreme Court, yet the Seventh Circuit made no detailed reference to the legisla-

**6.** *United States v. Hohri*, ––– U.S. –––, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987) (dealing with this court's jurisdiction granted at 28 U.S.C. § 1295(a)(2)).

tive history of the FCIA. Continuing this court's consistent focus on the source, we are convinced that Congress never intended this court to exercise jurisdiction over an appeal from a judgment like that *sub judice.* Because we can still, as was said in our original transfer order, "discern no basis for jurisdiction in the Court of Appeals for the Federal Circuit," we expand somewhat on that view here.[7]

In 28 U.S.C. § 1295(a)(1), Congress granted this court exclusive jurisdiction over any appeal from a final decision of the district court "if the jurisdiction of that court was based, in whole or in part, on Section 1338 of this title," and the jurisdiction of the district court was not based solely on a copyright or trademark claim. Section 1338 provides that "The district courts shall have original jurisdiction of *any civil action arising under any Act of Congress relating to patents....*" [Emphasis added.] For this court to have jurisdiction, the "controlling fact" is that the district court's jurisdiction must have been based "in whole or in part" on section 1338, and the involved "civil action" must therefore have been one "arising under" an Act of Congress relating to patents. *Atari, Inc. v. JS & A Group, Inc.,* 747 F.2d 1422, 1429, 223 USPQ 1074, 1079 (Fed.Cir.1984) *(in banc).*

"This is a substantial requirement. Immaterial, inferential, and frivolous allegations of patent questions will not create jurisdiction in the lower court, and therefore there will be no jurisdiction over these questions" in this court. S.Rep. No. 275, 97th Cong., 2d Sess. 19 *reprinted in* 1982 U.S.Code Cong. & Admin.News 11, 29 (Senate Report); *see* H.R.Rep. No. 312, 97th Cong., 1st Sess. 41 (House Report).

The district court correctly described its jurisdiction here as based on 28 U.S.C. § 1332 and 15 U.S.C. §§ 4, 15 and 26. That description would not control, if, unlike the present case, jurisdiction could *also* have been properly based in part on section 1338.[8] "As arbiter of our own jurisdiction, we necessarily have the power to decide the threshold question whether the district court has jurisdiction under section 1338 independently of the conclusion reached by the district court." *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 877, 219 USPQ 197, 200 (Fed.Cir.1983). To say otherwise would produce an absurd result, for our jurisdiction would then turn on statements of the district court. Similarly, a careful examination of the FCIA and its legislative history establishes the absurdity of supposing that Congress intended our jurisdiction, or that of the district court on which ours depends, to turn on whether a patent question is raised in an *argument* against a *defense* on cross-motions for summary judgment in an antitrust suit.

### (b) Patent Law
### Uniformity—Patent Issues

Though this court's exclusive substantive jurisdiction encompasses six major areas of national law in which Congress desired greater uniformity, of which patent law is but one, the Seventh Circuit correctly noted the congressional emphasis on the need for greater uniformity in patent law and for freeing the judicial process from the forum shopping caused by conflicting patent decisions in the regional circuits. *See* Senate Report, at 5–6, *reprinted in* 1982 U.S.Code Cong. & Admin.News at 15–16; House Report, at 20–23. Though the

---

**7.** Christianson's argument, in its motion to dismiss, that this court's transfer order was *res judicata* is without merit, the action not having been terminated. Because the Seventh Circuit's transfer to this court was "clearly wrong," we take the approach taken by that court, concluding that we are not bound by our sister circuit's ruling on the extent of our jurisdiction.

**8.** As the Seventh Circuit correctly noted, our appellate jurisdiction "depends on whether the jurisdiction of the district court *could* have been based on § 1338." 798 F.2d at 1058 n. 9, 230

USPQ at 846 n. 9 (emphasis in original). That is, that the district court's jurisdiction may also have been based on other grounds has no bearing on our jurisdiction. *Cf. Chemical Eng'g Corp. v. Marlo, Inc.,* 754 F.2d 331, 333, 222 USPQ 738, 740 (Fed.Cir.1984). As explained in the text, the district court's jurisdiction could *not* have been based even "in part" on Christianson's *argument* against Colt's trade secret defense. Arguments are not the source of a court's jurisdiction.

Seventh Circuit said that congressional concern "inform[s] our analysis of the jurisdictional question," 798 F.2d at 1058, 230 USPQ at 846, that court went on to assume frustration of that concern if this court did not hear *every* appeal involving in any manner any patent question. Similarly, Colt says this court has jurisdiction because of what it calls the "principle of patent law uniformity", and because this appeal involves a "patent issue" decided adversely to Christianson in *Springfield*.[9]

■ As said in *Atari*, "Achievement of increased uniformity in the substantive law of patents does not require that this court get its hands on every appeal involving an allegation that a patent law *issue* is somehow involved." 747 F.2d at 1429, 223 USPQ at 1078 (emphasis added). "Congress was not concerned that an occasional patent law decision of a regional circuit court, or of a state court, would defeat its goal of increased uniformity in the national law of patents." *Id.* at 1432, 223 USPQ at 1081.[10]

Carried to its logical end, the reasoning that this court has jurisdiction because a patent law *issue* is involved in sustaining or defeating Colt's *defense*, and thus indirectly and possibly defeating or sustaining Christianson's eventual antitrust recovery, would lead to absurd results. Applied to a state law contract suit on a patent license, with district court jurisdiction based *solely* on diversity (and thus not even in part on section 1338), that reasoning would direct the appeal here if the *defense* was noninfringement or patent invalidity. Even more absurdly, the logic of that reasoning would require removal to the district court and appeal to this court of that contract suit when diversity was absent. Indeed, application of that reasoning would produce the same absurd result if Christianson's present suit had been brought under Illinois antitrust law.

This court has recognized that "state courts may decide patent questions," *In re Oximetrix, Inc.*, 748 F.2d 637, 641, 223 USPQ 1068, 1071 (Fed.Cir.1984) (citing *Beghin-Say International, Inc. v. Ole-Bendt Rasmussen*, 733 F.2d 1568, 221 USPQ 1121 (Fed.Cir.1984)); *see In re Snap-On Tools Corp.*, 720 F.2d 654, 655, 220 USPQ 8, 9 (Fed.Cir.1983), as has the Supreme Court, *Lear v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610, 162 USPQ 1 (1969) (state courts may decide patent validity issue in license suit). If state courts may decide patent questions, it escapes our ken how it can be said, or that Congress said, that regional circuits may never do so.

■ As was made clear in *Atari*, Congress *specifically* and *expressly* rejected proposals that this court have "issue" jurisdiction and that appeals involving patent and nonpatent issues be bifurcated.[11] Rather, Congress granted this court jurisdiction over all appeals in "§ 1338 *cases*". Accordingly, this court decides all issues, including nonpatent issues, in a "case" that is properly within its jurisdiction. *See, e.g.,*

9. Colt is wrong, and should know it is wrong. Congress, as indicated in the text, expressly avoided any such "principle" in granting *case,* not *issue,* jurisdiction, and Christianson was not a party to the *Springfield* appeal, in which no "patent issue" was decided by this court.

That the district court consolidated the *Springfield* case with this case for purposes of discovery and trial does not create jurisdiction in this court. The present case is unlike that in *Interpart Corp. v. Italia,* 777 F.2d 678, 680, 228 USPQ 124, 125–26 (Fed.Cir.1985), where this court held it had jurisdiction over an appeal from a final judgment in a case of consolidated patent and nonpatent actions between the same parties. Here, unlike *Interpart Corp.,* the actions were not between the same parties, and, if both had been tried, separate judgments would have presumably been entered. Thus, consolidation here does not produce the effect produc-

ed by a filing of a patent action as a counterclaim. *See In re Innotron Diagnostics,* 800 F.2d 1077, 1080, 231 USPQ 178, 180 (Fed.Cir.1986).

10. The regional circuits are, of course, perfectly competent, as are state courts, to determine patent "questions" or "issues" that may occasionally arise in cases within their jurisdiction. "Uniformity" is not necessarily thereby abandoned. As indicated in *Atari,* 747 F.2d at 1440 n. 15, 223 USPQ at 1087 n. 15, the regional circuits might elect to apply the patent precedents of this court in such cases, just as this court applies regional circuit precedents in areas of law and procedure not within its exclusive jurisdiction.

11. *See United States v. Hohri,* 107 S.Ct. at 2250 n. 3.

*Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 875–78, 228 USPQ 90, 99–102 (Fed.Cir. 1985) (antitrust liability); *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 909–21, 223 USPQ 982, 986–95 (Fed.Cir. 1984) (trademark infringement). Having granted this court "case" and not "issue" jurisdiction, Congress clearly left cases merely involving defenses that raise patent *issues* in the regional courts of appeals, because the district court's jurisdiction in those cases is based solely on diversity, or on other grounds, and *not* "in whole or in part on section 1338."

In sum, what counts is not the mere presence or absence of patent "issues"; what counts is whether the district court's jurisdiction was based in whole or in part on section 1338. When it is, patent issues will be present; but the reverse is not true, for the *mere* presence of patent issues has no power to create jurisdiction in the district court. We find no basis or rationale, therefore, for an expanded, open-ended view that this court has been granted jurisdiction over all appeals in cases that contain patent issues, in talismanic reliance on "patent law uniformity" or otherwise.[12] As indicated, the legislative history indicates that this court has *not* been granted such broad and easily manipulated jurisdiction.

### (c) Traditional "Arising Under" Jurisdiction

Congress said cases are within this court's patent jurisdiction "in the same sense that cases are said to 'arise under' federal law for purposes of federal question jurisdiction." House Report, at 41; *see* 28 U.S.C. § 1331 (1982).[13]

▮ The Seventh Circuit correctly noted here that our jurisdictional grant, 28 U.S.C. § 1295(a)(1) "incorporates the traditional rules of statutory 'arising under' jurisdic-

tion." 798 F.2d at 1059, 230 USPQ at 846. The Ninth Circuit has also, noting that Congress was fully aware of the problems posed by traditional 'arising under' jurisdiction and "nonetheless chose to adopt the existing 'arising under' framework. We are not free to disregard this express congressional intent." *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1286 n. 3, 223 USPQ 214, 216 n. 3 (9th Cir.1984), *cert. denied*, 469 U.S. 1190, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985).

Whether an action arises under federal law "must be determined from what necessarily appears in the *plaintiff's statement* of his own claim in the bill or declaration, *unaided* by anything alleged in *anticipation or avoidance of defenses* which it is thought the defendant may interpose." *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983) (emphasis added) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914)); *see also Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936). The thus described well-pleaded complaint rule "severely limits the number of cases in which state law 'creates the cause of action' that may be initiated in or removed to federal district court, thereby avoiding more-or-less automatically a number of potentially serious federal-state conflicts." *Id.* 463 U.S. at 9–10, 103 S.Ct. at 2846 (quoting *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) ("A suit arises under the law that creates the cause of action.") (Holmes, J.)).

A *defense* that raises a federal question is thus *inadequate* to confer federal jurisdiction, *Merrell Dow Pharmaceuticals Inc. v. Thompson*, —— U.S. ——, 106 S.Ct. 3229,

---

**12.** The view that this court should "take" jurisdiction whenever that would facilitate "patent law uniformity", *see* Hale, *The "Arising Under" Jurisdiction of the Federal Circuit: An Opportunity for Uniformity in Patent Law*, 14 Fla.St.U.L. Rev. 229, 265 (1986), disregards the jurisdiction-granting role of the Congress. *Accord* 3 D. Chisum, *Patents* § 11.06[3], at 11–106.8 (1986).

**13.** 28 U.S.C. 1331 reads:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

3232, 92 L.Ed.2d 650 (1986) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)), "even if the defense is anticipated in the plaintiff's complaint, and *even if both parties admit that the defense is the only question truly at issue* in the case." *Franchise Tax Board*, 463 U.S. at 14, 103 S.Ct. at 2848 (emphasis added).[14] That "has been settled law" since *Gold-Washing & Water Co. v. Keyes*, 96 U.S. (6 Otto) 199, 24 L.Ed. 656 (1877). *Franchise Tax Board*, 463 U.S. at 14, 103 S.Ct. at 2848.

So here, Colt's trade-secret defense, at best anticipated in Christianson's complaint, cannot be said to create district court jurisdiction under section 1338, and thus cannot create this court's jurisdiction which, as Congress said, must be judged "in the same sense that cases are said to arise under federal law for purposes of federal question jurisdiction". House Report, at 41. That would be true if Colt's defense raised a question of federal law. It is even more compelling when one recognizes that Colt's trade secret defense raised *no* federal law question but rested entirely on state law, and that section 112 appears only as a theory on which to overcome that defense.

The Supreme Court spoke, in *Franchise Tax Board*, of vindicating "a right under state law." In arguing against Colt's trade-secret defense, Christianson is attempting to vindicate no "right under state law" and no right under patent law. The Supreme Court said in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), that plaintiff's *complaint* must be looked to, not arguments on cross-motions for summary judgment. The complaint here seeks to vindicate Christianson's right to be free from Colt's violation of the antitrust laws. Noncompliance with section 112 is not a violation of those laws.[15]

The Supreme Court has consistently held that cases do not "arise under" the patent laws merely because the case involves issues of a patent's validity and scope. *See, e.g., Luckett v. Delpark, Inc.*, 270 U.S. 496, 502, 46 S.Ct. 397, 399, 70 L.Ed. 703 (1926); *American Well Works Co., supra; Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 35 S.Ct. 658, 59 L.Ed. 1056 (1915); *The Fair v. Kohler Die Co.*, 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716 (1913); *Henry v. A.B. Dick Co.*, 224 U.S. 1, 32 S.Ct. 364, 56 L.Ed. 645 (1912); *Excelsior Wood Pipe Co. v. Pacific Bridge Co.*, 185 U.S. 282, 22 S.Ct. 681, 46 L.Ed. 910 (1902); *Wilson v. Sandford*, 51 U.S. (10 How.) 99, 13 L.Ed. 344 (1850).

The Supreme Court has held that a case arose under the patent laws when the "essential features [of the bill] were the allegation of an infringement and prayers for an injunction, and account for profits and triple damages,—the characteristic forms of relief granted by the patent law" in *Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 481, 35 S.Ct. 658, 659, 59 L.Ed. 1056 (1915). It was cases involving such "essential features" that Congress had in mind when it enacted section 1338 and section 1295(a)(1). No such essential features are present in this case.

Nor do we suggest a new distinction between *issues* and *claims* under the patent laws. As early as 1897, in *Pratt v. Paris Gas Light & Coke Co.*, 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458 (1897), the Supreme Court annunciated that critical distinction and its effect on federal jurisdiction:

The action under consideration is not one arising under the patent laws under the United States in any proper sense of the term. To constitute such a cause the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one con-

---

**14.** The Supreme Court's language in *Franchise Tax Board*, "even if both parties admit that the defense is the only question truly at issue in the case", may be compared with that of the Seventh Circuit here, which emphasized Christianson's § 112 *argument* against Colt's defense as "the crux of plaintiff's case."

**15.** Standing alone, the only effect of noncompliance with § 112 is to deny a patent to an applicant or to invalidate an issued patent.

struction, or sustained by the opposite construction of these laws. [Citations omitted.]

The state court had jurisdiction both of the parties and the subject-matter as set forth in the declaration, and it could not be ousted of such jurisdiction by the fact that, incidentally to one of these defences, the defendant claimed the invalidity of a certain patent. To hold that it has no right to introduce evidence upon this subject is to do it a wrong and deny it a remedy. Section [1338] does not deprive the state courts of the power to determine *questions* arising under the patent laws, but only of assuming jurisdiction of "cases" arising under those laws. There is a clear distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening pleading—be it a bill, complaint or declaration—sets up a right under the patent laws as a ground for a recovery. Of such the state courts have no jurisdiction. The latter may appear in the plea or answer or in the testimony. The determination of such question is not beyond the competency of the state tribunals.

168 U.S. at 259, 18 S.Ct. at 64 (emphasis in original).

So here, because this court was granted "case" jurisdiction, *Atari,* 747 F.2d at 1435, 223 USPQ at 1084, the mere raising of a patent law "question" in a motion for summary judgment in an antitrust action ("case") cannot, under any test, cause that action to "arise under" the patent laws. It is equally incapable of causing the district court's jurisdiction to be based "in whole or part on section 1338" and cannot therefore give this court jurisdiction over an appeal.

Honoring Congress' intent that we adopt the traditional framework for determining whether an action arises under section 1338, this court, as well as other courts of appeals, have *explicitly* followed the principles annunciated in the noted Supreme Court cases. For cases in which this court found no jurisdiction, see *Schwarzkopf Development Corp. v. Ti-Coating, Inc.,* 800 F.2d 240, 231 USPQ 47 (Fed.Cir.1986) (suit

for royalties due under a patent license contract; district court jurisdiction based on diversity and not changed by transient counterclaim); *Beghin-Say International, Inc. v. Ole-Bendt Rasmussen,* 733 F.2d 1568, 221 USPQ 1121 (Fed.Cir.1984) (action seeking declaration that plaintiff owned two patent applications; complaint sounded exclusively in contract). *See also Gilson v. Republic of Ireland,* 787 F.2d 655, 229 USPQ 460 (D.C.Cir.1986). For cases in which this court found jurisdiction, *see Yarway Corp. v. Eur-Control USA, Inc.,* 775 F.2d 268, 227 USPQ 352 (Fed.Cir.1985) (licensee's suit for patent *infringement* by licensor arose under the patent laws); *Air Products and Chemicals, Inc. v. Reichhold Chemicals, Inc.,* 755 F.2d 1559, 225 USPQ 121 (Fed.Cir.) (court must review plaintiff's pleadings, with special attention to relief requested; complaint averred infringement and sought injunctive relief), *cert. dismissed,* 473 U.S. 929, 106 S.Ct. 22, 87 L.Ed.2d 700 (1985).

In *Pratt v. Paris Gas Light & Coke Co.,* 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458 (1897), and in *Excelsior Wood Pipe Co. v. Pacific Bridge Co.,* 185 U.S. 282, 22 S.Ct. 681, 46 L.Ed. 910 (1902), the Supreme Court looked to whether plaintiff had asserted at least some right or privilege that would be defeated by one or sustained by an opposite construction of those laws. The assertion of such a "right or privilege" was looked to in *Beghin-Say International, supra,* (no jurisdiction) and in *Dubost v. United States Patent and Trademark Office,* 777 F.2d 1561, 1564–65, 227 USPQ 977, 979 (Fed.Cir.1985) (jurisdiction found).

The "right or privilege" referred to, however, must appear on the face of the complaint, unless it can be shown that plaintiff is avoiding reference to it to evade federal jurisdiction. *See Franchise Tax Board,* 463 U.S. at 22, 103 S.Ct. at 2852. Use of "defeated or sustained" has proven unfortunate, for those words have been seized upon here to implicate *defenses* and has thereby led to the misconception that the mere presence of a patent issue created by a defense (or even, as here, by an argu-

ment against a defense) makes the case one over which the district court's jurisdiction is based on section 1338. To take that view would be to convert an inquiry into jurisdiction over Christianson's complaint and action into an inquiry into jurisdiction over Colt's defense and Christianson's response to that defense.

It would have been more clear, and more in accord with the well-pleaded complaint rule, if the phrase had been "plaintiff must have asserted in the complaint some right or privilege *the existence of which* would be defeated by one or sustained by an opposite construction" of the patent laws. The rule was never intended to permit a court's jurisdiction to be determined by what is said in a defense or in resisting a defense, or by whether a plaintiff would *win* with one construction or *lose* with another. "Defeated or sustained" relates to what is present, expressly or by necessary implication, in the complaint, *not* to the outcome of the law suit.[16]

 One thing clear in our cases is that this court has adhered to the well-pleaded complaint rule [17] and to Congress' warning that a "canon of construction" requires that "courts strictly construe their jurisdiction." Senate Report, at 18–19, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 28–29. The court has looked to determine whether the complaint does in fact seek relief provided for by the patent laws or states a right, the existence of which turns on construction of the patent laws. *See Chemical Engineering Corp. v. Marlo, Inc.,* 754 F.2d 331, 222 USPQ 738 (Fed.Cir. 1984). Christianson nowhere seeks relief provided by the patent laws and its complaint states no right the existence of which turns on construction of the patent laws.

Unwarranted deviation from the well-pleaded complaint rule would undermine Congress' wise provision that our jurisdiction be normally determined at the earliest stage of litigation, *i.e.,* at the complaint stage. *Interpart Corp. v. Italia,* 777 F.2d 678, 680, 228 USPQ 124, 126 (Fed.Cir.1985). "To impart certainty throughout the entire process of filing, pretrial, trial, and post-trial motions, appellate jurisdiction should normally be known and remain unaffected." *Atari,* 747 F.2d at 1432, 223 USPQ at 1081; *see also* 3 D. Chisum, *Patents* § 11.06[3], at 11–106.8 (1986) (advantage knowing from beginning of suit where appellate jurisdiction lies in that trial judge and counsel can focus on controlling circuit case law). Adherence to the well-pleaded complaint rule may thus provide the same advantage of early determination of jurisdiction between this court and a regional circuit court that it has traditionally provided in early determination of jurisdiction between state and federal courts.

To say that jurisdiction can be based on an argument made on a motion for summary judgment would not only violate the well-pleaded complaint rule but would open the door to the manipulation of jurisdiction and the evils of forum shopping, a door Congress thought it was closing when it enacted the FCIA.

### (d) What is Christianson's Cause of Action?

Assessing the scope of the patent laws in determining whether particular causes of action arise under those laws, is a task not always free of difficulty. *See Alco Standard Corp. v. Tennessee Valley Authority,* 808 F.2d 1490, 1504, 1 USPQ 2d 1337, 1347 (Fed.Cir.1986) (Nies, J., concurring); *Alco Standard Corp.,* 808 F.2d at 1511, 1 USPQ2d at 1352–53 (Rich, J., dissenting);

---

**16.** Obviously, no "construction" of § 112 is required here. If it be found as a fact that Colt did or did not comply with § 112, that may affect the particular argument made by Christianson against Colt's trade secrets in arguing Christianson's summary judgment motion for trade secret invalidity, but it could itself neither defeat nor sustain the existence of any "right or privilege" of Christianson.

**17.** We reject suggestions that we should simply disregard the well-pleaded complaint rule. *See* Adams, *The Court of Appeals for the Federal Circuit, More Than a National Patent Court,* 49 Mo.L.Rev. 43, 69 (1984). "[I]t is clear from the language of the [FCIA] and its legislative history that the well-pleaded complaint rule does limit the patent jurisdiction" of this court. *Id.*

*Wyden v. Commissioner of Patents and Trademarks,* 807 F.2d 934, 937, 231 USPQ 918, 921 (Fed.Cir.1986) (Markey, C.J., dissenting); *Dubost v. United States Patent and Trademark Office,* 777 F.2d 1561, 1568, 227 USPQ 977, 982 (Fed.Cir.1985) (Newman, J., dissenting). A more fundamental and threshold task is less difficult, however. That task is to determine what actual cause of action is alleged in the complaint.

In its motion to dismiss, Christianson argues that its cause of action does not even *depend* on a "construction of a patent law":

> [I]nvalidating Colts patents, its alleged trade secrets, or seeking a construction of § 112, was not even one of plaintiffs' theories for recovery, let alone its "only" theory. The complaint sought recovery because Colt put plaintiffs out of business by organizing a group boycott, a classic antitrust violation. Additionally, either as an independent ground for recovery, or as an aggravation of the antitrust violations, the complaint alleges that Colt unilaterally revoked its permission previously granted to plaintiffs to deal in M–16 parts. The issue of trade secret invalidity under § 112 arose only after Colt pleaded its alleged trade secrets as a defense to the antitrust violations. [Citations omitted.]

Apparently unaware that jurisdiction cannot be created by counsel's theories in briefs or motions, Colt says "virtually every page of [Christianson's] brief in this court and of their motion below was based on the § 112 theory." Making only one reference to the complaint, Colt says it "makes explicit reference to the alleged invalidity of Colt's patents 'through the wrongful retention of proprietary information in contravention ... § 112' (complaint ¶ 18)," arguing in effect that the complaint here should be treated as though it were a complaint in an action for declaratory judgment of patent invalidity. Though its language is convoluted, Paragraph 18 contains at most an anticipation, and only an anticipation, of Colt's *trade-secret* defense.

▮ A careful review of the complaint reveals that Colt and the Seventh Circuit have given undue weight to a misinterpretation of its disjointed and inartful Paragraph 18. The key sentence relied upon merely states that "*Unless* such patents were invalid through the wrongful retention of proprietary information in contravention of ... 35 U.S.C. § 112, in 1980, when such patents expired, anyone 'who has ordinary skill in the rifle making art' is able to use the technology of such expired patents for which Colt earlier had a monopoly position for 17 years." [Emphasis added.] The sentence states a non-sequitur, for anyone is free to use the inventions in expired patents, whether those patents had been valid or invalid and whether section 112 had or had not been complied with. The paragraph refers only to expired patents, assumes that the patents had been valid, and in no way seeks a declaration of invalidity of any patent. That the district court in its final judgment said Colt's patents were invalid could not *retroactively* establish that the district court's jurisdiction over the complaint and action was based on section 1338, and could not serve to manipulate the jurisdiction of this court in this case.

▮ Our interpretation of Paragraph 18 is confirmed by Colt's response to it, wherein, as above indicated, Colt "*admits that Colt's patents are valid.*" [Emphasis added.] The misinterpretation of Paragraph 18 by Colt and the Seventh Circuit results in creation of just the kind of "inferential allegation" Congress did *not* want used to manipulate our jurisdiction. Senate Report, at 19, *reprinted in* 1982 U.S. Code Cong. & Admin.News at 29; *see* House Report, at 41.

The complaint reveals that Christianson attempted to allege only the ingredients of an antitrust violation as its cause of action. Christianson seeks relief under the antitrust laws because Colt has "embarked on a course of conduct to illegally extend its monopoly position with respect to the described patents and to prevent ITS from engaging in any business with respect to parts and accessories of the M–16." [¶ 22]

The Seventh Circuit's statement that that conduct is "inconsistent with the objectives of the patent system," 798 F.2d at 1061, 230 USPQ at 848, is difficult to understand in the context of assessing this court's jurisdiction. Christianson had to and did mean that Colt was using an invalid claim to *trade secrets* to extend its monopoly, but this court was simply not granted jurisdiction of appeals from antitrust judgments whenever the antitrust offense alleged was the employment of trade secrets. That is true regardless of the theory on which plaintiff responds to the trade secret defense (trade secrets lost because based on public information, because of inadequate security measures, or because of failure to disclose them in patents).

In numerous subparagraphs, Christianson's complaint alleged specific acts by Colt which supposedly violated the antitrust laws by forcing Christianson out of the M–16 parts market. None has the slightest thing to do with patent law (falsely telling customers and potential customers why they should not deal with Christianson; maintaining a lawsuit in bad faith; acts contrary to permission Colt gave Christianson to deal in M–16 parts). Those allegations in the complaint were virtually ignored by the Seventh Circuit.

We agree with Christianson that the Seventh Circuit incorrectly disposed of its argument that the trade secret validity issue arose only *after* Colt asserted its trade secrets defense of the acts charged in the complaint. Respecting that argument, the Seventh Circuit said:

> Because [Christianson's] only theory for the invalidation of the trade secrets was Colt's failure to comply with § 112, Christianson's argument that [it] expected Colt to assert that *its patents were valid* cannot mean that he was anticipating a defense.[14] Thus, we find that Christianson's argument that patent va-

lidity was a "defense" only serves to confirm that [it] was relying on Colt's alleged noncompliance with § 112 as the basis for [its] own cause of action.

> [14] If Christianson is saying that Colt fully complied with § 112, but, nonetheless, attempted to make a trade secret out of that which was in the public domain, then there is no reason for Colt to present the "defense" of patent validity, because both sides are then in agreement. In other words, the defendant's allegation of patent validity cannot be a defense to the plaintiff's allegation of patent validity.

798 F.2d at 1062, 230 USPQ at 849.

The primary difficulty with the foregoing is that "it ain't so." Christianson expected Colt to assert its *trade secrets* as a defense, not that its expired patents had been valid. Christianson could *not* for its cause of action be "relying on Colt's noncompliance with § 112," because, as above indicated, such noncompliance in itself cannot provide a cause of action or a basis for relief to anyone. Finally, both sides *were* in agreement regarding patent validity, which was simply neither involved nor material, the invalidity of Colt's claim to trade secrets being sufficient to defeat Colt's defense.

That the only theory Christianson here presented for invalidating Colt's claim to trade secrets was Colt's noncompliance with section 112 is irrelevant to jurisdiction, for the obvious reason above stated, i.e., that Colt's state law trade secrets were raised solely as a defense.[18] Thus the patent law would become involved only if and *after* Colt had made out a valid claim to those secrets under state law. *See Franchise Tax Board*, 463 U.S. at 13, 103 S.Ct. at 2848.

The Seventh Circuit's mistaken belief that Christianson said it anticipated Colt's defense of *patent validity*, when, as Christianson correctly argued, the complaint anticipated Colt's defense of *trade secrets*, may account in great part for its view that

**18.** In seeking to defeat the defense of trade secrets because they should have been disclosed in its patents, Christianson relied on *Syntex Ophthalmics, Inc. v. Novicky*, 214 USPQ 272, 280 (N.D.Ill.1982), *aff'd*, 701 F.2d 677, 219 USPQ 962 (7th Cir.1983), distinguishing *Flick-Reedy Corp. v. Hydro-Line Mfg. Co.*, 241 F.Supp. 127, 140–41,

144 USPQ 566, 576 (N.D.Ill.1964), *aff'd in part and rev'd in part*, 351 F.2d 546, 146 USPQ 694 (7th Cir.1965), *cert. denied*, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966). We need not and therefore do not comment on the correctness of the holdings in *Syntex* and *Flick-Reedy*.

this court has jurisdiction over this appeal. The fact is clear on the record, in any event, that Christianson sought to defeat Colt's trade-secrets defense so Colt would have no plausible basis for attempting the group boycott alleged by Christianson as one of the bases for its antitrust suit.

Continuing its unfounded notion that "patent law uniformity" requires appeal here whenever a shadow of a shade of patent law appears anywhere in a case, Colt says this antitrust action arose under the patent laws because it can be "sustained" (sic, plaintiff can win) only by defeating Colt's trade secret defense on a section 112 theory. Thus Colt confirms the entry of the patent law, not even as a defense, but as merely an argument to overcome a defense.[19]

As previously noted, that Christianson's *argument* may depend on an application of section 112 confers no jurisdiction in this court. The district court did not, as it could not, say the section 112 issue caused its jurisdiction to be "based in whole or in part on § 1338." 28 U.S.C. § 1295(a)(1). Colt's noncompliance with section 112 was clearly not part of the prima facie case set forth in the complaint, and is not Christianson's cause of action. The facts alleged setting forth Christianson's *antitrust* cause of action in the complaint require *no* construction of the patent laws.[20]

The Seventh Circuit, in considering how Christianson's right might be affected by construction of the patent laws, lost sight of the right Christianson *was* "seeking to vindicate" in his complaint, which was a right to money damages and an injunction under the antitrust laws for numerous acts of Colt (group boycott, tortious interference, etc). The existence of that right would *not* be defeated or sustained by a construction of the patent laws. It was Colt's trade secret *defense* to one charge (group boycott) that would be defeated or

sustained by a construction of the patent laws. Whether Christianson would win or lose on its argument against that defense could not possibly make Christianson's cause of action one arising under the patent laws or the district court's jurisdiction "based in whole or in part on § 1338."

Looking to counsel's briefs and to post-complaint motions and arguments, the Seventh Circuit was led so far from Christianson's complaint as to render the well-pleaded complaint rule virtually meaningless in this instance. In the complaint, Christianson did not allege that the anticipated defensive assertion by Colt of its trade secrets, whether that claim was valid or invalid under any law, would amount to an antitrust violation. It was only Christianson's theory of response to Colt's trade secrecy defense, not a "right or privilege" or any "cause of action" of Christianson, that raised a question about Colt's duty to disclose those particular trade secrets under the patent laws.

### (2) The Interest of Justice

██ We have again concluded that this court has not been granted jurisdiction over an appeal from this type of summary judgment in an antitrust case, and that this court acted in the interest of justice when it transferred this appeal to the regional circuit court. However, now that the transferee court has transferred the case back to this court, new considerations arise.

The "interest of justice" provision in 28 U.S.C. § 1631 was intended to require a balancing of a transfer to a court having jurisdiction against dismissal for lack of jurisdiction in the transferring court. Nonetheless, the present special circumstances equally implicate the need to act in the interest of justice. Our action here is, accordingly, strictly limited to these circumstances, in which we balance the insti-

---

**19.** Colt says its grant and withdrawal of permission to use the trade secrets is not an antitrust violation, and, incredibly, argues from that premise that this court has jurisdiction over this appeal.

**20.** It may be helpful to recognize that no patent issue or question, under § 112 or otherwise, would have been present at all if Colt had *not* elected to include its trade secret defense in its answer, or if Christianson had tried to overcome that defense on grounds other than noncompliance with § 112.

tutional costs of deciding the case on the merits against the needs of the parties.

Because the Seventh Circuit and this court have each determined that the other has jurisdiction, it would at first appear that certification to the Supreme Court would be warranted, pursuant to 28 U.S.C. § 1254(3). Much as we might welcome a definitive resolution of the present jurisdiction question, we equally abhor the burden on the Court, noting that it has accepted only four certified questions since 1946. *See* R. Stern, E. Gressman & S. Shapiro, *Supreme Court Practice* 460–61 & n. 3 (6th ed. 1986). The relative rarity of the present issue and the added delay to the litigants argue against this court's adding to the already heavy workload of the Supreme Court by certification.

If this court were to grant Christianson's motion to dismiss, the district court's judgment, though it is erroneous, *infra*, would stand, unless the Supreme Court were to grant a petition for certiorari, review the jurisdiction question, and remand to the appropriate appellate court for its review on the merits. A dismissal of this appeal would therefore risk leaving the parties with no avenue of appellate review of the district court's judgment. For that reason, and because a dismissal would not be in the interest of justice, we deny Christianson's motion to dismiss.

Similarly, we will deny Colt's request that, if this court lacks jurisdiction, we re-re-transfer the appeal to the Seventh Circuit. A third transfer would subject the parties to a continuation of the back-and-forth battering they have experienced to date, and nothing would preclude the Seventh Circuit from ordering a fourth transfer, this court a fifth, etc. It would not therefore be in the interest of justice to again transfer the appeal to the Seventh Circuit.

The parties have briefed and argued in both circuit courts and have not yet received a disposition on the merits of the appeal. It is time they did. Recognizing the delay already experienced, we see no reason that would justify further delay. Notwithstanding a strong sense of discomfort occasioned by our view of our jurisdiction, and realizing that the Seventh Circuit would be equally uncomfortable, we have determined that a rule of necessity and the interest of justice due the parties compel us to resolve the questions presented on the merits of the judgment appealed from. In so doing, we are confident that the Seventh Circuit, had it elected to exercise its jurisdiction and decided the merits, would have reached the same result in light of the precedents we cite. Similarly, the present decision will be effective because the district court is bound by the Seventh Circuit's view that this court has jurisdiction.

### (3) Summary Judgment

#### (a) Introduction

The ghost in the wings of this unusual case is the military procurement system, with its requirement for interchangeability of parts of weapons. Like others producing products for a customer that demands interchangeability, Colt developed certain information and mass-production practices needed to insure that all parts of all its M–16 rifles were interchangeable with corresponding parts. It is that manufacturing or production information and "know how" that constitute Colt's trade secrets. It is that mass-production information that Christianson seeks to acquire. Christianson does not seek simply to make, use, and sell the inventions disclosed and claimed in the expired patents in suit, which he is clearly free to do. Christianson's desire is to mass-produce M–16 rifles with all 160 parts completely interchangeable, a desire frustrated by Colt's trade secret protection on its mass-production data and drawings.

It is undisputed that one could not make the 160–part M–16 *rifle* from reading disclosures in patents on nine parts, even if those patents disclosed Colt's mass-production data on those parts. It is also undisputed that successful *sales* of a *particular rifle*, the M–16, require interchangeability of its 160 parts and that Colt actively conceals the mass-production information it has developed on dimensions and tolerances and the production drawings necessary

to make corresponding parts interchangeable.

### (b) The District Court

The district court found that one cannot copy Colt's "commercial product with little effort by the application of reverse engineering." 609 F.Supp. at 1182, 227 USPQ at 366. By "commercial product" the court necessarily meant the M–16 rifle, not the parts disclosed and claimed in the patents in this case. Colt's "commercial product" appears nowhere in any claim of any patent of record. Indeed, no claim in any patent of record relates to or even mentions the M–16 or any other particular rifle.

The district court noted that this case involves the "uncommon situation where interchangeability is an absolutely essential requirement of customers, amounting to a situation of life and death on occasion" and that the inventor knew that "dimension and tolerances necessary for interchangeability ... were important at the time of filing the patent applications." *Id.* Those findings are correct in relation to mass production but irrelevant to the section 112 issue.

The court found that, because "the parts could not be employed in any other existing weapon," the *only* mode for practicing the parts inventions is to incorporate them "into the standard M–16 military rifle," and thus Colt's "crucial interchangeability specifications should have been disclosed in the patent." *Id.* The finding that the parts could not be employed in a weapon is clearly erroneous and finds no support in the record. The patents relate to no particular "existing" weapon.

Deeming Colt's failure to disclose its trade secrets a "flagrant abuse of the patent laws," the district court found it liable under Christianson's antitrust count, and then went on to hold Colt liable under the count charging tortious interference with contract and ordered the extensive relief summarized *supra* and reported at 613 F.Supp. at 331–32.

### (c) Arguments of the Parties

Surprisingly, Colt does not argue the presence of genuine issues of material fact. Rather, Colt challenges the grant of summary judgment as a matter of law because the district court: focused on *no claim* in any Colt patent; relied on facts not in the record; misconstrued affidavit testimony; found antitrust liability not requested in Christianson's summary judgment motion; and relied on unprecedented legal conclusions in invalidating Colt's trade secrets and in holding Colt liable. Each of those arguments is valid.

Christianson cites what it says is the uncontroverted testimony of Colt engineer Waterman that one of ordinary skill cannot "from the bolt assist patent" use the patented bolt assist in any weapon. The cited testimony actually states, however, that one of ordinary skill could not "make a weapon that would have incorporated the bolt assist" simply from reading the bolt assist patent. The law is not so foolish as to require that a patent on a single part of a 160–part weapon must include instructions on how to make the *weapon*. Christianson's statement that the cited testimony was that the patented "bolt assist" could not be "incorporated in a weapon other than the M16" is at best disingenuous. No such testimony exists.

Christianson, as did the district court, emphasizes the testimony of Seth Bredbury, who said it would be a "massive" undertaking to design a rifle like the M–16 from the Colt patents. The relevance of and reliance on that testimony is difficult to understand. There is no "M–16 patent" of record, nor does any patent of record make any reference to "a rifle like the M–16." To design a 160–part "rifle like the M–16" from patents on nine parts would be not just a massive undertaking, it would be impossible. That the mass production of any product having 160 interchangeable parts is a "massive" undertaking cannot be doubted. It requires the development of dimensions, tolerances, and voluminous drawings. Colt undertook and succeeded in that massive-production effort, an effort Christianson desires lifted from its shoulders.

Christianson's arguments that the district court "was not limited to the words

Colt chose in its patent claims" and that the claims are mere matters of "semantics," are contrary to the statute, 35 U.S.C. § 112, second paragraph, and totally without merit.

### (d) The Law

The district court's view that Colt violated section 112, by failing to disclose in each of its nine patents all its dimensions, tolerances, and production drawings needed to mass produce the M–16 rifle, rests on an error of law.

The legal requirement that a disclosure be enabling is set forth in the first paragraph of 35 U.S.C. § 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

■ Patents are not production documents, and nothing in the patent law requires that a patentee must disclose data on how to mass-produce the invented product, in patents obtained on either individual parts of the product or on the entire product. *In re Strahilevitz,* 668 F.2d 1229, 1232, 212 USPQ 561, 563 (CCPA 1982); *In re Gay,* 309 F.2d 769, 774, 135 USPQ 311, 316 (CCPA 1962); *Douglas v. United States,* 510 F.2d 364, 366, 206 Ct.Cl. 96, 184 USPQ 613, 615, *cert. denied,* 423 U.S. 825, 96 S.Ct. 40, 46 L.Ed.2d 41 (1975); *Trio Process Corp. v. L. Goldstein's Sons, Inc.,* 461 F.2d 66, 74, 174 USPQ 129, 134 (3rd Cir.), *cert. denied,* 409 U.S. 997, 93 S.Ct. 319, 34 L.Ed.2d 262 (1972).

■ Thus the law has never required that a patentee who elects to manufacture its claimed invention must disclose in its patent the dimensions, tolerances, drawings, and other parameters of mass production not necessary to enable one skilled in the art to practice (as distinguished from mass-produce) the invention. Nor is it an objective of the patent system to supply, free of charge, production data and production drawings to competing manufacturers. And that is well, for such a requirement would be irrational. Many inventions are never manufactured; the decision to manufacture may be taken well after the patent has issued; printing a thousand or more documents in the patent would often be required. For those and other reasons, the law requires that patents disclose inventions, not mass-production data, and that patents enable the practice of inventions, not the organization and operation of factories. The requirement for disclosure of sufficient information to enable one skilled in the art to practice the best mode of the *claimed* invention is and has been proven fully adequate for over 150 years.

■ The "invention" referred to in the enablement requirement of section 112 is the *claimed* invention. *Lindemann Maschinenfabrik v. American Hoist and Derrick Co.,* 730 F.2d 1452, 1463, 221 USPQ 481, 489 (Fed.Cir.1984) (the "question is whether the disclosure is sufficient to enable those skilled in the art to practice the *claimed* invention") (emphasis added); *Raytheon Co. v. Roper Corp.,* 724 F.2d 951, 956, 220 USPQ 592, 596 (Fed.Cir.1983), *cert. denied,* 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984).

■ The district court here supplied no analysis of the inventions claimed in the involved patents and no analysis of whether *those inventions* could be practiced without the dimensions, tolerances, and production drawings Colt developed for mass-producing one particular rifle. Indeed, there was *no testimony* and *no evidence* indicating that the disclosures in the involved patents do not enable one skilled in the art to practice the inventions disclosed and *claimed* in those patents. For that reason, Christianson's reliance on *White Consolidated Industries, Inc. v. Vega Servo-Control, Inc.,* 713 F.2d 788, 218 USPQ 961 (Fed.Cir.1983) is misplaced, for there the nondisclosed matter was necessary to enable one to practice the *claimed* invention. *Id.* at 791, 218 USPQ at 963.

On the present record, therefore, there is nothing whatever to indicate that Christianson is unable to make and use the *claimed* inventions. Under the law, the question of whether Christianson is enabled by the patents to engage in mass production of the claimed inventions and to incorporate them in a particular rifle in a manner desired by a particular customer is simply and totally irrelevant.

As with enablement, so with best mode. *Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.*, 607 F.2d 885, 897, 203 USPQ 25, 37 (10th Cir. 1979) ("it is the best mode of carrying out the *claimed* invention that must be set forth pursuant to section 112") (Miller, J., sitting by designation) (emphasis in original), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980). The best mode requirement assures that inventors do not conceal the best mode known to them when they file a patent application, but the "best mode" is that of practicing the *claimed* invention. It has nothing to do with mass production or with *sales* to customers having particular requirements. In this case, interchangeability with M–16 parts appears nowhere as a limitation in any claim, and as Christianson concedes, the patents make no reference whatever to the M–16 rifle. Thus the best mode for making and using and carrying out the *claimed inventions* does not entail or involve either the M–16 rifle or interchangeability. The "best mode" for making and using the claimed parts relates to their use in *a* rifle, any rifle. There is nothing anywhere in the present record indicating that any of the patents fail to meet that requirement. Again, there was no testimony or evidence relating to the best mode of practicing the *claimed* inventions.

Christianson complains of its inability to sell an M–16 rifle to an army. Its difficulty, however, is not with section 112, or with Colt's compliance with section 112.

The patent system has conferred on Colt no exclusivity or economic advantage respecting Colt's dimensions, tolerances, and drawings necessary for interchangeability. Colt's sole basis for protection of the production data and drawings it developed to achieve interchangeability lies in state trade-secrecy law. Because there is nothing of record to indicate that disclosure of its production secrets in its patents was required by section 112, there can be and is no conflict here between federal patent law and state trade-secrecy law, and thus no question of "preemption." For the same reason, Colt's non-disclosure of its trade secrets in its patent applications was not "inconsistent with the objectives of the patent system" and Colt is not "extending its exclusionary rights" in the patented inventions. Christianson has shown simply no basis whatever for arguing that Colt did not fulfill its section 112 *quid pro quo* in obtaining the involved patents.

The district court's only basis for invalidating Colt's claim to production trade secrets was its view that failure to disclose them constituted noncompliance with section 112. As above indicated, that was legal error, nothing of record having indicated that the disclosures in the involved patents failed to enable, or to supply the best mode, in relation to the inventions claimed in those patents. There is no evidence, nor is it argued, that Colt kept its *inventions* secret. Nor has it been shown that any of Colt's secrets were necessary parts of or needed to practice Colt's inventions. Nor has it been shown that interchangeability was part of any of the claimed inventions. All that has been shown and argued is that Colt has not let Christianson have Colt's manufacturing techniques, a fact having nothing to do with section 112 or any other part of the patent law.

Thus there is no basis in this record for invalidating either Colt's claim to trade secrets or its patents. Nor is there a basis for the district court's rulings that noncompliance with section 112 preempts state trade secret law in this case, or that Colt is liable under the antitrust laws or for tortious interference with contract. A basis is equally lacking for the district court's dismissal of Colt's counterclaims. The summary judgment entered by the district court rests on legal error and must for that

reason be reversed and vacated in its entirety.

### (e) The Facts

 Whether a patent disclosure complies with the best mode requirement of section 112 is a question of fact. Enroute to its grant of summary judgment, the district court resolved some disputed issues of material fact and disregarded others. Summary judgment was for that further reason improper.

As above indicated, the district court here noted this court's dicta about section 112 in its opinion in *Springfield,* but it disregarded these immediately ensuing lines of this court's opinion:

> Springfield points to "admissions" of Colt's witnesses that M–16 specifications were necessary for making the M–16 rifle. However, as we understand it, the numerous Colt patents covered *parts* of the M–16, so that, at most, a best mode of each would be for *use* in the M–16 rifle—not for the M–16 itself. This would require an analysis, patent by patent, of the specifications (trade secrets) alleged to be essential in practicing each invention and/or meeting the best mode requirement; also a showing of why each individual invention could not be practiced and/or the best mode requirement satisfied in the absence of such specifications; further, whether such specifications were in existence at the time the Colt patent applications were filed. [Emphasis in original.]

### CONCLUSION

This court was correct in its original transfer of this appeal to the Seventh Circuit. Compelled to decide the merits, however, we reverse the summary judgment granted to Christianson in its entirety, vacate portions of the summary judgment that are not grounded on the complaint and for which there is no support in the record, and remand the case to the district court for further proceedings not inconsistent with this opinion.

Christianson's motion to dismiss and Colt's request that a sanction be imposed on Christianson are denied.

REVERSED IN PART, VACATED IN PART, AND REMANDED.

NICHOLS, Senior Circuit Judge, concurring and dissenting.

I join in the judgment of the court and in part (3) of the court's opinion. I think the district court's opinion was preposterous and must be reversed. It fails, among other things, to take into account the acts of the government as purchaser of the M–16. The United States could have obtained the M–16 rifle from its inventors and developers, as a sole source, or could have opened its procurement up to competition, breaking any monopoly derivable from United States patent law, state trade secret law, or otherwise. *Leesona Corp. v. United States,* 599 F.2d 958, 220 Ct.Cl. 234, 202 USPQ 424, *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). How does a supplier do wrong in doing what its customer wants, when the customer is the United States?

I am unable to join parts (1) and (2) because, with all respect, I think they deal with the jurisdictional problem in an incorrect manner. If it is true we lack jurisdiction (part 1), whence do we derive authority to do anything other than return the case once again to the Seventh Circuit, which has jurisdiction, if we do not?

I would reach the same result by a different route. Ever since Congress enacted the Tucker Act a century ago, Ch. 359, 24 Stat. 505 (1887) (current version at 28 U.S.C. § 1491), there has existed a situation where the judicial power of the United States has been exercised in part by courts having jurisdiction within a single region over multiple subject matters, and in part by courts having nationwide jurisdiction over more limited subject matters. Such a partitioning has always meant a high degree of likelihood of conflicting claims to jurisdiction (or conflicting denials of it) along the lines of demarcation, in the borderline cases. They represent traps for the unwary, causes of added cost and delay in

the disposition of litigation, and sometimes even discredit for the judiciary. An example, long antedating the Federal Courts Improvement Act, is *Amell v. United States*, 384 U.S. 158, 86 S.Ct. 1384, 16 L.Ed.2d 445 (1966), in which the Supreme Court, reversing the Court of Claims, held that Congress had thought of civilian sailors on government-owned and operated vessels as civil servants who happened also to be seamen rather than seamen who happened also to be civil servants; thus their wage claim should be enforced under the Tucker Act, not the Suits in Admiralty Act. Numerous as such cases have been, we may suppose many more instances lurk in the interstices to illustrate again once more that only one law is universal: Murphy's Law. When the express language of the statutes does not provide answers, perhaps the legislative history will. When both are silent, the supposition, as in *Amell*, that Congress must have thought so and so, is pretty much a legal fiction. How much a fiction it was in *Amell*, Justice Harlan's able dissent will show. If Congress thinks, it leaves its thought recorded, but it could not possibly think of all the problems the future will bring. *United States v. Hohri*, — U.S. —, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987), is a more recent example of the problems which must ever arise under the Federal Courts Improvement Act or any other legislation along the same lines. It is more realistic to say that Congress relies on the good sense and good will of the judges to solve such problems when they arise, as they surely will, to make jurisdictional law using their own experience, study, and reflection, and their sense of what Congress sought to do, to reach some reasonable solution. If it would not do such violence to custom, I would even go so far as to suggest that two courts differing about where jurisdiction lies, though it must lie in one or the other, should actually confer to agree, if possible, on what they should do.

It is not uncommon for two federal courts to make conflicting claims to the same subject matter. It is less common for each to assert the baby belongs on the other's lap. That is what we have here. It appears to me courts ought to accord a decent respect to the first fully articulated view about a question of this kind. That is the Seventh Circuit's view here, as our decision that preceded it was unpublished and gave no reasons. If the legislative intent was not expressly stated, and cannot be divined from legislative history all pointing one way, I think the first appellate court that speaks should be followed, unless its decision is obviously indefensible: the kind of decision so bad it would not rate as "law of the case." That we, if writing on a clean slate, would write differently, is not ground enough to reject the Seventh Circuit's conclusions here if they are ones that reasonable judges could arrive at. If we approach our task that way, the absurd result of each court returning the case to the other can be avoided.

I do not think the Seventh Circuit's decision in this case is one no reasonable judge would have made. It struck me as quite persuasive when I first read it. Now I know a powerful counter argument is possible, because I have just read one, but I do not see this case as open and shut for either conclusion.

What happened in the district court seems to be that the judge adopted, on summary judgment, a line not pointed out in the pleadings of either side. It seems obvious to me that a new "well-pleaded complaint," written by one who wished to call up the court's ultimate conclusion, is the one we must postulate. As the Seventh Circuit points out, the "well pleaded complaint" of the cases is not necessarily the actual complaint. It is the supposititious complaint that would have supported the relief sought. Such a complaint here would support jurisdiction under section 1338. It asserts a right or privilege that would be defeated by one or sustained by an opposite construction of the patent laws. *Beghin-Say International Inc. v. Rasmussen*, 733 F.2d 1568, 1570, 221 USPQ 1121, 1123 (Fed.Cir.1984). I believe such a "well-pleaded complaint" here would have used the patent law offensively. The hypothetical pleader would complain of a breach of the patent law by Colt's failure to publish

an enabling disclosure so the pleader could make an M–16 rifle. (This is absurd, but it is the ground the court went off on.) This enabling disclosure would have included all the "trade secrets." Therefore, the court must require Colt now to do what it ought to have done earlier, *i.e.*, make the secrets available now. In deciding whether this is a claim to a right under the patent laws, we must not be misled by its sheer preposterousness, or its novelty. The fact the district court's decision was based on a mere "argument" is not decisive if the court could and should have called for an amended complaint. If the suit started as one under the antitrust laws, it was now one no longer, or not solely. It has become one to enforce a right allegedly created by the patent statute. The antitrust laws could not be the source of a complaint that the specification disclosures were inadequate, and the whole antitrust case collapses if the disclosures were in fact all the patent law required.

If this analysis is not the only possible one, I think it cannot be called frivolous, or absurd, or "clearly wrong." It does not require me to agree that our first decision rejecting jurisdiction was, as the Seventh Circuit said, "clearly wrong" either. I do not see how they knew this if they did not know its reasoning. We must choose. But it seems a little unnatural to me to treat the "well-pleaded complaint" rule as requiring us to leave uncorrected a decision under the patent laws as destructive to the rights of patentees as the one we review here.